[No. D014985. Fourth Dist., Div. One. Apr. 22, 1993.]

MICHAEL SCHAEFER, Plaintiff and Appellant, v.
LEON L. WILLIAMS et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

COUNSEL

Michael Schaefer, in pro. per., for Plaintiff and Appellant.

Butz, Lucas, Dunn & Enright, Stephen D. Lucas, Timothy S. Wiltsie, Neil, Dymott, Perkins, Brown & Frank and Bernard Richard Deetman for Defendants and Respondents.

OPINION

**TODD, Acting P. J.**—Michael Schaefer sued Leon L. Williams and M. Larry Lawrence for breach of contract and defamation over a 1990 campaign brochure. Lawrence successfully demurred to the contract cause of action. Williams prevailed on the contract cause of action against him by securing a judgment on the pleadings. Subsequently, the trial court granted summary

judgment in favor of both defendants on the defamation cause of action. Schaefer appeals (1) the order granting judgment on the pleadings and dismissing the contract cause of action against Williams, and (2) the summary judgment granted to both defendants. With respect to the contract action, Schaefer's appeal poses the question whether a voluntary agreement to abide by the Code of Fair Campaign Practices gives rise to an enforceable contract. With respect to the summary judgment, Schaefer maintains it was improperly granted because there are triable issues of material fact.

FACTS

In 1990, Schaefer and Williams were candidates for a seat on the San Diego County Board of Supervisors, namely, the Fourth District supervisorial seat. On February 22, 1990, Williams signed a pledge to abide by the Code of Fair Campaign Practices, which, among other things, included an agreement not to use or permit the use of character defamation on any candidate. On April 12, 1990, Lawrence, at the request of Williams's campaign manager, telephoned Schaefer and asked that Schaefer refrain from running a negative campaign. Lawrence was asked to make the phone call because he knew Schaefer. According to Schaefer, during this phone conversation Lawrence told him that Williams's campaign would put out a mailing against him if he did anything negative about Williams or attacked Williams personally.

During the election campaign, Williams's staff circulated a campaign brochure that reprinted seven newspaper articles or excerpts from newspaper articles published during the early 1980's about Schaefer and his legal difficulties with respect to some apartment buildings he owned in Los Angeles and San Diego.[1]

Lawrence had no knowledge of the campaign brochure until after this lawsuit was filed.

Williams was reelected to his supervisorial seat on June 5, 1990.

---

[1] The campaign brochure consists of four pages. The first page displays a photograph of Schaefer under the question: "TRYING TO REMEMBER WHY YOU RECOGNIZE MIKE SCHAEFER?" The next two pages propose to answer the question by stating: "HE JUST MANAGES TO MAKE THE NEWS . . ." These pages include the newspaper articles and excerpts. The final page begins with: "AND WHY SHOULD YOU VOTE TO RE-ELECT SUPERVISOR LEON WILLIAMS" and includes endorsements from various people.

DISCUSSION

I

 Schaefer contends Williams's failure to abide by his pledge to follow the Code of Fair Campaign Practices was an actionable breach of contract. Schaefer is wrong.

Schaefer's attempts to characterize Williams's written pledge to abide by the Code of Fair Campaign Practices as an enforceable contract are without merit. A contract is an agreement to do or not to do a certain thing and gives rise to an obligation or legal duty that is enforceable in an action at law. (Civ. Code, §§ 1549, 1427, 1428.) The Restatement Second of Contracts presents the following definition: "A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." (Rest.2d Contracts, § 1.)

Civil Code section 1550 provides there are four essential elements of a contract: parties capable of contracting; their consent; a lawful object; and a sufficient cause or consideration. Williams's written pledge does not satisfy Civil Code section 1550 because there are not at least two contracting parties. Or, as expressed in the Restatement Second of Contracts, "[t]here must be at least two parties to a contract, a promisor and a promisee, . . ." (Rest.2d Contracts, § 9.) Here, as it clearly states on the face of the document signed by Williams, the pledge to abide by the Code of Fair Campaign Practices was voluntary. In essence, there was a promisor (Williams), but no promisee. "In one sense a person can make a promise to himself, but the law does not provide remedies for breach of such promises." (Rest.2d Contracts, § 9, com. a.)

Schaefer argues unpersuasively that the People of the State of California are the promisees, and he (Schaefer) is one of the People. As we understand the argument, in order for the Code of Fair Campaign Practices to have any teeth, that is, be enforceable, any offended member of the community must have standing to sue a candidate who violates a pledge to abide by the code. We cannot accept this circular public policy argument for enforcement of the Code of Fair Campaign Practices as providing a necessary missing element to the existence of an enforceable legal contract. (Civ. Code, § 1550.)

A second factor that makes Williams's pledge to abide by the Code of Fair Campaign Practices unenforceable as a contract is the lack of legal consideration. Williams's promise to forebear from defaming other candidates is

not lawful consideration. (*Kallen* v. *Delug* (1984) 157 Cal.App.3d 940, 949 [203 Cal.Rptr. 879].) ■ As the Court of Appeal in *Kallen, supra,* said: "The concept of unlawful consideration embraces a promise to refrain from wrongful conduct directed at the promisee or a third person. [Citations.] . . . [I]llegal consideration encompasses such a promise because it is contrary to law or public policy for an individual who has acted wrongfully to the injury of another to exact a consideration for relinquishing such conduct. In other words, the law finds repugnant the coercion inherent in a promise which carries the implied threat that, without acquiescence in the return promise exacted, the wrongful conduct will continue. [Citations.]" (*Id.* at pp. 949-950, fn. omitted.) Or, as the Restatement of Contracts put it: "A bargain, the sole consideration of which is refraining or promising to refrain from committing a crime or tort, or from deceiving or wrongfully injuring the promisee or a third person, is illegal." (Rest., Contracts, § 578.)[2]

■ Schaefer's argument that it is up to the Legislature to declare a contract is contrary to public policy is unavailing. The Code of Fair Campaign Practices is contained in Elections Code section 12520. It is part of chapter 6 of the Elections Code, which is entitled "Fair Campaign Practices" and was enacted in 1982. (Stats. 1982, ch. 855, § 1, p. 3201.) Section 12500 of the Elections Code sets forth the legislative intent for the chapter:

"The Legislature hereby declares that the purpose of this chapter is to encourage every candidate for public office in this state to subscribe to the Code of Fair Campaign Practices.

"It is the ultimate intent of the Legislature that every candidate for public office in this state who subscribes to the Code of Fair Campaign Practices will follow the basic principles of decency, honesty, and fair play in order that, after vigorously contested, but fairly conducted campaigns, the citizens of this state may exercise their constitutional right to vote, free from dishonest and unethical practices which tend to prevent the full and free expression of the will of the voters.

"The purpose in creating the Code of Fair Campaign Practices is to give voters guidelines in determining fair play and to encourage candidates to

---

[2]The comment to the Restatement section stated: "Though it is not only legal but praiseworthy to refrain from committing the acts to which the Section relates, it is an illegal bargain to exact pay for such negative conduct. If such a bargain were allowed, threats of various wrongs might be made a means of exacting payment. Such bargains might be voidable for duress; but a bargain with sufficient legal consideration is not rendered illegal by the addition of a promise to refrain from misconduct, unless that promise was used as a means of exacting greater compensation. In that case there is involved a threat of committing the wrong in question." (Rest., Contracts, § 578, com. a.)

discuss issues instead of untruths or distortions." Nowhere in chapter 6 of the Elections Codes is there any suggestion that a pledge to abide by the Code of Fair Campaign Practices is enforceable through a private action. Surely, if the Legislature had intended to create such a private action, it would have done so by clear and direct language. (See *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 294-295 [250 Cal.Rptr. 116, 758 P.2d 58].) Moreover, Elections Code section 12525 restates the voluntary nature of the Code of Fair Campaign Practices and Elections Code section 12524 provides for public access to the Code of Fair Campaign Practices forms subscribed by all candidates. From this, it can be inferred the Legislature believed that any enforcement of the Code of Fair Campaign Practices would be obtained in the court of public opinion. In any event, in 1987, five years after it enacted the fair campaign statutes, the Legislature enacted chapter 7 of the Elections Code, entitled "Libel and Slander," which provides that campaign advertising or communications are subject to libel and slander causes of action. (Stats. 1987, ch. 778, § 2, p. 2450; see also Elec. Code, §§ 12527, 12528.) As a statement of legislative intent, the 1987 legislation stated: "The addition of Chapter 7 (commencing with Section 12527) to Division 9 of the Elections Code by Section 2 of this act does not constitute a change in, but is declaratory of, existing law." (Stats. 1987, ch. 778, § 3, p. 2450.) ■ Thus, when the fair campaign statutes were enacted and when the Legislature revisited the issue five years later, it was the legislative intent that the legal remedy for defamation in the course of a campaign was a private action for libel or slander.

II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

Affirmed.[6]

Froehlich, J., and Nares, J., concurred.

---

*See footnote, *ante,* page 1243.
[6]Williams's request for sanctions on appeal is denied.