[No. A081471. First Dist., Div. Four. Feb. 19, 1999.]

VIKCO INSURANCE SERVICES, INC., Plaintiff and Appellant, v. OHIO INDEMNITY COMPANY, Defendant and Respondent.

56

**COUNSEL**

Gagen, McCoy, McMahon & Armstrong, Charles A. Koss, Richard C. Raines and Ali P. Hamidi for Plaintiff and Appellant.

Archer, McComas, Breslin, McMahon & Chritton, Robert L. Sallander, Jr., and Robert G. Seeds for Defendant and Respondent.

## OPINION

**McGUINESS, J.**[*]—This appeal arises from a dispute and lawsuit over the termination of an insurance agency contract. Following a court trial, Vikco Insurance Services, Inc. (Vikco) appeals from a judgment entered in favor of respondent Ohio Indemnity Company (Ohio) determining that there is no private right of action to sue for damages for alleged violation of Insurance Code section 769.[1] Vikco contends the trial court's determination is erroneous. For the first time on this appeal, Vikco also asserts that even if no private right of action exists under section 769, it may in any event bring its claims against Ohio pursuant to the Unfair Business Practices Act (Bus. & Prof. Code, § 17200 et seq.). We disagree with all of Vikco's arguments, and affirm the judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

At all times relevant to this appeal, Ohio has been in the business of providing automobile damage coverage in California. In April 1992, Ohio entered into a written contract (the Agency Agreement) with Vikco under which Vikco became Ohio's agent in California for the purpose of issuing insurance policies for Ohio. Included in the Agency Agreement was a provision stating that either party could terminate the agency relationship upon 45 days' written notice to the other.[2] On March 1, 1995, Ohio personally delivered Vikco written notice that it was terminating the Agency Agreement effective April 30, 1995.

On March 22, 1996, Vikco filed suit against Ohio in Contra Costa County Superior Court. Vikco's complaint alleged four causes of action. The second cause of action, the only one relevant to this appeal, alleged that under section 769 Ohio was required to give Vikco 120 days' notice of terminating the Agency Agreement, instead of the approximately 60 days' notice it did

[*]Presiding Justice of the Court of Appeal, First District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]Unless otherwise indicated, all further statutory references are to the Insurance Code.

[2]In pertinent part, the relevant provision of the Agency Agreement states: "This Agreement may be terminated:

"(a) Any time by mutual agreement; or

" . . . . . . . . . . . . . . . . . . . . . .

"(d) By either party upon forty-five (45) days written notice to the other."

give; and that by failing to give 120 days' notice Ohio damaged Vikco "in a sum to be shown according to proof. . . ."[3]

In its issue conference statement and accompanying motions *in limine*, Ohio contended: (1) Vikco did not have a private right of action to bring suit against Ohio for violation of section 769; (2) the provisions of section 769 are not implied in the parties' Agency Agreement; (3) under the express terms of section 769, the statutory 120-day notice of termination period may be modified by contract and mutual agreement of the parties; (4) assuming a violation of section 769 and the right to assert it, Vikco was not entitled to recover damages for lost commissions on policies it would have written if given longer notice of termination; and (5) if legally entitled to damages at all, the correct measure of damages would be net profit on additional business Vikco would have taken in, based on commissions minus the cost of obtaining and servicing this business.

After issue conference and submission of trial briefs, the matter was argued before the trial court on November 3, 1997. At the conclusion of the hearing, the trial court dismissed Vikco's second cause of action, holding that there was no private right of action for damages for violation of section 769. Vikco dismissed its remaining three causes of action without prejudice. On December 22, 1997, the trial court granted Ohio's motion *in limine* on the basis of its earlier determination that no private right of action exists under section 769. The trial court issued a written statement of decision and directed that judgment be entered for Ohio. Judgment was entered, and this appeal was timely noticed.

## II. RIGHT OF ACTION UNDER SECTION 769

Before analyzing Vikco's substantive claim that it is entitled to damages for Ohio's failure to give it written 120 days' notice of termination in accordance with section 769, we must address the threshold jurisdictional issue of whether Vikco may bring this action at all. The controlling question in this case is whether there is a private right of action for violation of section 769. The trial court determined that: (1) in enacting section 769, the Legislature intended to protect the interests of both independent insurance agents and insureds, but did not intend to create a private right of action to enforce the provisions of the statute; and (2) the protections of section 769 are not implied in the Agency Agreement between the parties. The question

---

[3]In pertinent part, section 769 provides as follows: "(a) After a written agency or written brokerage contract, where the broker-agent represents the insurer, has been in effect for at least one year, it shall not be terminated or amended by an insurer, except by mutual agreement, unless 120 days advance written notice has been given by the insurer to the broker-agent."

of the existence of a private right of action to enforce the provisions of section 769 is apparently one of first impression.

■ The rules for statutory construction by an appellate court are well established. "[O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.]" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323]; see also *Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 733 [114 Cal.Rptr. 460, 523 P.2d 260]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Conservatorship of Bryant* (1996) 45 Cal.App.4th 117, 120-123 [52 Cal.Rptr.2d 755]; *Schmidt* v. *Retirement Board* (1995) 37 Cal.App.4th 1204, 1210-1212 [44 Cal.Rptr.2d 297]; *Mir* v. *Charter Suburban Hospital* (1994) 27 Cal.App.4th 1471, 1487 [33 Cal.Rptr.2d 243]; *Carlsbad Mun. Water Dist.* v. *QLC Corp.* (1992) 2 Cal.App.4th 479, 488-491 [3 Cal.Rptr.2d 318]; *DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 17-19 [194 Cal.Rptr. 722], overruled on other grounds in *Yamaha Corp. of America* v. *State Bd. of Equalization* (1998) 19 Cal.4th 1, 10-15 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)

Code of Civil Procedure section 1858 states the "general rule" for construction of statutes as follows: "In the construction of a statute . . . , the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (See *California Fed. Savings & Loan Assn.* v. *City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297] [office of judge neither to insert nor to omit]; *Manufacturers Life Ins. Co.* v. *Superior Court* (1995) 10 Cal.4th 257, 274 [41 Cal.Rptr.2d 220, 895 P.2d 56] [citing § 1858 as one of the "[w]ell-established canons of statutory construction" and describing it as a "mandate"]; *Crusader Ins. Co.* v. *Scottsdale Ins. Co.* (1997) 54

Cal.App.4th 121, 133 [62 Cal.Rptr.2d 620].) Similarly, Code of Civil Procedure section 1859 provides: "In the construction of a statute the intention of the Legislature . . . is to be pursued, if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it."

These provisions are themselves expression of legislative intent regarding the proper interpretation of statutes enacted by the Legislature. Thus, " '. . . "[i]n construing . . . statutory provisions a court is not authorized to insert qualifying provisions not included and may not rewrite the statute to conform to an assumed intention which does not appear from its language." ' " (*In re Hoddinott* (1996) 12 Cal.4th 992, 1002 [50 Cal.Rptr.2d 706, 911 P.2d 1381].) "[C]ourts are not at liberty to impute a particular intention to the Legislature when nothing in the language of the statute implies such an intention. . . ." (*Dunn-Edwards Corp.* v. *Bay Area Air Quality Management Dist.* (1992) 9 Cal.App.4th 644, 658 [11 Cal.Rptr.2d 850].) In short, we must begin by giving the statutory language its ordinary everyday meaning, construed in the context of the purposes and objectives of the Legislature.

■ Section 769, subdivision (a), states that once a written insurance agency or brokerage contract has been in effect for a year, it "shall not be terminated or amended by an insurer, except by mutual agreement, unless 120 days advance written notice has been given by the insurer to the broker-agent." This language sets out a simple mandatory rule requiring 120 days' written notice of termination, with one exception where "by mutual agreement" the parties provide otherwise.[4] The remainder of section 769 contains provisions for the protection of insureds where a terminated agent is unable to place the existing insurance policy with another insurance company. The statute does not contain any language providing a remedy or means of enforcing its substantive operative provisions. Specifically, there is no reference whatsoever to a private right of action, or any other language stating that an individual insurance agent or independent insurance agency may bring a lawsuit to enforce the statute.

■ Adoption of a regulatory statute does not automatically create a private right to sue for damages resulting from violations of the statute. Such a private right of action exists only if the language of the statute or its legislative history clearly indicates the Legislature *intended* to create such a right to sue for damages. If the Legislature intends to create a private cause of action, we generally assume it will do so " 'directly[,] . . . in clear,

---

[4]Further exceptions to the 120-day written notice requirement are enumerated in subdivision (b) of section 769. Neither party contends any of these exceptions are applicable here, and we do not address them.

understandable, unmistakable terms . . . .' [Citation.]" *(Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 294-295 [250 Cal.Rptr. 116, 758 P.2d 58] *(Moradi-Shalal)*; see also *Crusader Ins. Co.* v. *Scottsdale Ins. Co., supra,* 54 Cal.App.4th at pp. 125-137 [because a judge may not insert what has been omitted from a statute, legislative intent alone determines whether a statute creates a new private right to sue]; *Schaefer* v. *Williams* (1993) 15 Cal.App.4th 1243, 1248 [19 Cal.Rptr.2d 212] [nothing in Elections Code creates a private cause of action to enforce a pledge to follow fair campaign practices; "Surely, if the Legislature had intended to create such a private action, it would have done so by clear and direct language"]; *Nowlon* v. *Koram Ins. Center, Inc.* (1991) 1 Cal.App.4th 1437, 1444-1445 [2 Cal.Rptr.2d 683] [absent some express provision for civil liability, courts cannot assume a private cause of action for negligence may be brought any time a legislative enactment is violated].)

In *Moradi-Shalal, supra,* 46 Cal.3d 287, our Supreme Court specifically addressed the issue of whether a private right of action exists to enforce the provisions of another section of the Insurance Code, section 790.03 of the article prohibiting unfair insurance practices.[5] In that case, the Supreme Court held that the Legislature did not intend to create a private right of action against insurers who commit the unfair practices enumerated in section 790.03, despite the existence of language in a companion section (§ 790.09) stating that cease-and-desist orders issued by the Insurance Commissioner under the unfair practices provisions shall not "relieve or absolve" an insurer from any "civil liability . . . under the laws of this State arising out of the methods, acts or practices found unfair or deceptive." The Supreme Court held this language was insufficiently direct, precise, unmistakable and unambiguous to create a private right of action to enforce the unfair practice prohibitions set out in section 790.03. *(Moradi-Shalal, supra,* 46 Cal.3d at pp. 294-295, 304-305.)

---

[5]Section 790.03 enumerates eight broad and frequently overlapping categories of acts or conduct "defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance." These are: (1) making any misrepresentations, false or misleading statements; (2) publishing or disseminating any untruthful, deceptive or misleading statements; (3) actions in unreasonable restraint of, or creating a monopoly in, the business of insurance; (4) misrepresenting an insurer's financial condition with intent to deceive; (5) making false entries or willful omissions with intent to deceive; (6) unfair rate discrimination; (7) making any statement that a given insurer is a member of the California Insurance Guarantee Association or is insured against insolvency; and (8) any unfair claims settlement practices. The statute enumerates 16 specific practices, including among other things: misrepresenting pertinent facts or insurance policy coverage provisions; failing to acknowledge claims promptly; failing to implement reasonable standards for prompt investigation and processing of claims; failing to affirm or deny coverage within a reasonable time after proof of loss; attempting to settle a claim for an unreasonably low amount; and advising a claimant not to obtain an attorney.

 Vikco urges that the reasoning of *Moradi-Shalal* is distinguishable and inapplicable to this case. It argues that because the Legislature expressly provided administrative remedies in section 790.05 for violations of the unfair insurance practices enumerated in section 790.03, thereby placing responsibility for enforcement of the unfair practices provisions in the hands of the Insurance Commissioner, a private right of action is unnecessary to enforce section 790.03. In contrast, the article of the Insurance Code in which section 769 is codified does not contain any corresponding provision specifying administrative enforcement remedies. According to Vikco, the absence of such a provision expressly setting out administrative remedies for violations of section 769 indicates "the Legislature intended that the very person most affected by lack of [termination] notice and most able to enforce section 769 within a meaningful time frame, namely the agent affected, should be able to enforce this section."

Vikco is wrong. In fact, there is a statute providing an administrative remedy for violations of section 769. Section 790.06 specifically gives the Insurance Commissioner the power to undertake administrative proceedings to enjoin unfair business practices *not* enumerated or defined in section 790.03.[6]

---

[6]In pertinent part, section 790.06 provides: "(a) Whenever the commissioner shall have reason to believe that any person engaged in the business of insurance is engaging in this State in any method of competition or in any act or practice in the conduct of such business which is not defined in Section 790.03 and that such method is unfair or that such act or practice is unfair or deceptive and that a proceeding by him in respect thereto would be in the interest of the public, he may issue and serve upon such person an order to show cause containing a statement of the methods, acts or practices alleged to be unfair or deceptive and a notice of hearing thereon to be held at a time and place fixed therein, which shall not be less than 30 days after the service thereof, for the purpose of determining whether the alleged methods, acts or practices or any of them should be declared to be unfair or deceptive within the meaning of this article.

"The hearings provided by this section shall be conducted in accordance with the Administrative Procedure Act, Chapter 5 (commencing at Section 11500) of Part 1, Division 3, Title 2 of the Government Code, and the commissioner shall have all the powers granted therein. If the alleged methods, acts, or practices or any of them are found to be unfair or deceptive within the meaning of this article the commissioner shall issue and service upon said person his written report so declaring.

"(b) If such report charges a violation of this article and if such method of competition, act or practice has not been discontinued, the commissioner may, through the Attorney General of this State, at any time after 30 days after the service of such report cause a petition to be filed in the superior court of this State within the county wherein the person resides or has his principal place of business, to enjoin and restrain such person from engaging in such method, act or practice. . . .

" . . . . . . . . . . . . . . . . . . . . . . . . .

"(d) If the court finds that the method of competition complained of is unfair or that the act or practice complained of is unfair or deceptive, that the proceeding by the commissioner with respect thereto is to the interest of the public and that the findings of the commissioner are

Section 790.06 parallels section 790.05, the administrative enforcement provision giving the Insurance Commissioner the power to remedy acts specifically barred by section 790.03. The difference is that section 790.06 is not limited to remedying acts in violation of any particular statute. Instead, it provides an administrative means to remedy *any* acts by an insurer deemed "unfair or deceptive." Under section 790, the purpose of the entire article of which section 790.06 is a part (art. 6.5) is "to regulate trade practices in the business of insurance . . . by defining, *or providing for the determination of,* all such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined *or determined.*" (Italics added.) Section 790.06 provides the administrative means for defining and remedying such "unfair or deceptive" trade practices not otherwise defined or enumerated in *that article* of the Insurance Code. Clearly, acts specifically barred elsewhere in the Insurance Code, such as those prohibited in section 769, are by virtue of that fact contrary to public policy. It does not constitute an extraordinary leap of reason or logic to conclude that such specifically prohibited conduct, including violations of section 769, are within the "unfair or deceptive" acts for which section 790.06 provides an administrative remedy. Thus, under section 790.06 the Commissioner appears to have the same responsibility to remedy violations of section 769, following essentially the same administrative procedures, as that provided by section 790.05 with respect to violations of section 790.03.

Section 769 explicitly anticipates the Insurance Commissioner's involvement in its enforcement by specifically requiring the commissioner to determine whether obliging an insurer to renew existing policies after an agent's termination would threaten the financial integrity or solvency of the insurer. (§ 769, subds. (d), (e).) The fact section 769 does not set forth the procedure for obtaining the commissioner's involvement indicates the Legislature's intention that existing administrative procedures, such as those set out in section 790.06, be employed.

Section 790.06 was enacted in 1959. (Stats. 1959, ch. 1737, § 1, p. 4189.) It had been in effect for over a quarter of a century by the time the Legislature enacted section 769. (Stats. 1986, ch. 781, § 1, p. 2572; Stats. 1987, ch. 643, § 1, p. 2042; Stats. 1995, ch. 921, § 1.) The Legislature was already aware that any unfair insurance business practices *not* specifically enumerated in section 790.03 or elsewhere in the Insurance Code could lead to significant administrative sanctions under section 790.06, whether or not

---

supported by the weight of the evidence, it shall issue its order enjoining and restraining the continuance of such method of competition, act or practice." (Stats. 1959, ch. 1737, § 1, p. 4189.)

an individual insurance agent had a private civil cause of action. The Legislature simply assumed the same preexisting administrative remedies would apply to section 769, and that a private right of action was unnecessary. Thus, the presence of this administrative remedy in section 790.06 at the time the Legislature enacted (and later amended) section 769, together with the absence of any reference to a private right of action in section 769 itself, is strong evidence the Legislature did not intend to create such a private right to sue for damages.[7]

Moreover, when the Legislature most recently amended section 769 in 1995, it was necessarily aware of the 1988 decision in *Moradi-Shalal* holding that no private right of action existed in section 790.03. Despite the Supreme Court's explicit statement in that case that "nothing . . . would prevent the Legislature from creating additional civil or administrative remedies, including, of course, creation of a private cause of action," the Legislature did not take the opportunity to add any language creating such a right in section 769. (*Moradi-Shalal, supra,* 46 Cal.3d at p. 305.) The Legislature necessarily knew that if it did not amend section 769 expressly to provide a private right of action for alleged violations of that statute, courts could interpret it as affording no such private right of action. In our opinion, the Legislature's failure to amend the statute to provide explicit authorization of a private right of action when given this opportunity is conclusive evidence of its intent that the sole remedy for violations of section 769 remain administrative.

## III. RIGHT OF ACTION UNDER UNFAIR BUSINESS PRACTICES ACT

■ Vikco now contends that even if no private right of action exists to enforce section 769, it could proceed under the laws prohibiting unfair competition, as codified in the Unfair Business Practices Act (Bus. & Prof. Code, § 17200 et seq.)[8] This argument is flawed on both procedural and substantive grounds.

■ Vikco did not plead any cause of action under Business and Professions Code section 17200. Nor did it request leave to do so. As a general

---

[7]This conclusion is further bolstered by the legislative landscape in other jurisdictions at the time section 769 was enacted. At the time, there were at least 18 states with agency-termination legislation. The Supreme Court in at least one of those states—Missouri—had already held that the only remedy for violation of the agency termination statute was administrative, and there was no private right to sue for damages. (*Shqeir* v. *Equifax, Inc.* (Mo. 1982) 636 S.W.2d 944, 947-949.) The Missouri Supreme Court based its decision on the fact the Missouri State Legislature had not expressly created a private right of action in the subject statute, and there were other administrative means of enforcement set out in separate code provisions. The same circumstances are obviously present in the instant case.

[8]As pertinent to this appeal, the applicable provisions of the Unfair Business Practices Act are as follows: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or

rule, issues or theories not properly raised or presented before the trial court will not be considered on appeal. (*Steele* v. *Totah* (1986) 180 Cal.App.3d 545, 551-553 [225 Cal.Rptr. 635]; *Zito* v. *Firemen's Ins. Co.* (1973) 36 Cal.App.3d 277, 283 [111 Cal.Rptr. 392]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 394, pp. 444-446.) However, we have discretion to consider an issue not properly raised in the trial court, if it presents a pure question of law on undisputed factual evidence regarding either (1) a noncurable defect of substance such as lack of jurisdiction or failure to state a cause of action, or (2) a matter affecting the public interest or the due administration of justice. (*Sea & Sage Audubon Society, Inc.* v. *Planning Com.* (1983) 34 Cal.3d 412, 417 [194 Cal.Rptr. 357, 668 P.2d 664]; *Hale* v. *Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512]; *Wilson* v. *Lewis* (1980) 106 Cal.App.3d 802, 805 [165 Cal.Rptr. 396]; *Redevelopment Agency* v. *City of Berkeley* (1978) 80 Cal.App.3d 158, 167 [143 Cal.Rptr. 633]; 9 Witkin, Cal. Procedure, *supra*, Appeal, § 398, pp. 450-451.) Because this is a jurisdictional issue of first impression, we consider it despite Vikco's failure to raise it below.

█ The substantive difficulty with Vikco's argument is that the enforcement provisions of Business and Professions Code section 17200 et seq. provide a right to and the means of obtaining *equitable* relief only. Assuming a violation of section 769 could be interpreted to constitute a violation of Business and Professions Code section 17200, Vikco could sue for an injunction. (Bus. & Prof. Code, § 17203; *Dean Witter Reynolds, Inc.* v. *Superior Court* (1989) 211 Cal.App.3d 758, 774 [259 Cal.Rptr. 789].) Of course, Vikco has never sought this relief. Instead, it seeks to recover unrealized commissions and general compensatory damages it claims it suffered as a result of being given less than 120 days' written notice of termination. The Unfair Business Practices Act simply does not provide a means for recovery of such damages. The only nonpunitive monetary relief available under the Unfair Business Practices Act is the disgorgement of moneys wrongfully obtained. (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1266 [10 Cal.Rptr.2d 538, 833 P.2d 545] ["[D]amages are not

misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." (Bus. & Prof. Code, § 17200.)

"Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." (Bus. & Prof. Code, § 17203.)

"Unless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state." (Bus. & Prof. Code, § 17205.)

available under [Bus. & Prof. Code] section 17203"]; *Dean Witter Reynolds, Inc.* v. *Superior Court, supra,* 211 Cal.App.3d at p. 774.) Vikco makes no such claim.

We conclude that the Legislature did not intend to create any private right or cause of action to enforce the provisions of section 769, and that the sole remedy for alleged violations of that statute is administrative. Section 769 does not create a private right to sue for damages, either directly or by indirect operation of the Unfair Business Practices Act (Bus. & Prof. Code, § 17200 et seq.). The trial court was correct in so determining, and we must affirm the judgment in Ohio's favor on that basis.

## IV. Reconciling Statutory and Contractual Notice Requirements

■ Even were we to decide the threshold jurisdictional issue in Vikco's favor and uphold a private right of action to enforce individual insurance agents' claims pursuant to section 769, we would still be compelled to affirm the judgment in this case.

Section 769 expressly provides that a written agency agreement shall not be terminated or amended by the insurer without 120 days' advance written notice, "except by mutual agreement." Vikco insists the "except by mutual agreement" phrase of section 769 must be read as referring only to the language preceding it. Under Vikco's reading of the statute, once an agency contract has been in effect for one year, the statutory 120-day advance notice requirement is absolute and cannot be affected by the actual terms of the parties' written agreement. Vikco's interpretation would do away with the parties' freedom to provide by contract for a different advance notification period. Here, in fact, the Agency Agreement in question provided *both* for termination by mutual agreement, which could be done at "[a]ny time," and alternatively for termination upon 45 days' written notice by *either* party to the other. Thus, the parties in this case expressly contracted for both termination possibilities.

In our opinion, the most reasonable interpretation of the subject statutory language is that the Legislature intended to permit the parties to a written agency contract to agree to a different notification procedure; i.e., one requiring either an advance notification period greater than 120 days, or one shorter than that. This interpretation is supported by the legislative history of the statute, which indicates the "except by mutual agreement" language was added to the provision in order to address a concern that, as written, the legislation imposed too much statutory control over the private relationships

and agreements of insurers and their agents.[9] We conclude that, contrary to Vikco's arguments, the express language of section 769 itself specifically contemplates that the parties may agree to terminate on *less* than 120 days' notice.

In this case it is undisputed that: (1) the parties *expressly agreed* in their Agency Agreement that Vikco's agency arrangement with Ohio could be terminated upon only 45 days' notice; and (2) Ohio gave Vikco *at least* 55 days' written notice of termination. Vikco undoubtedly received all of the notice it was entitled to receive under its Agency Agreement. The fact this was less notice than would have been required under section 769 is immaterial, since the statute itself provides that the parties to an agency contract like the one in this case may agree to a different notification procedure.

Moreover, even if the statute did not expressly set out a specific exception to the 120-day notification period based on mutual consent, under well-established law Vikco had the power to waive the statute's protections. Civil Code section 3513 states: "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." Vikco acknowledges— indeed, it has affirmatively asserted as part of its argument for damages— that the 120-day rule was enacted specifically to benefit agents like itself. The legislative history clearly supports this fact. Because the 120-day termination rule was specifically intended for the benefit of agents like Vikco, Vikco had the legal right and capacity to waive its benefits.

---

[9]The legislative history shows that the mutual consent exception was not in the original versions of the bill. The only evidence in the legislative history to explain this amendment is the following concern expressed by the Senate Committee on Appropriations in its analysis of the bill: "We question the necessity for imposing statutory control over what should be a private insurer-agent relationship. There appears to be no reason for the State to involve itself in private matters between an insurer and its agents or brokers. . . ." The record indicates the "except by mutual agreement" language was added to the bill *after* this express statement of concern that the legislation as written represented an unncessary intrusion into private contractual relationships.

As Vikco has stated its interpretation of the statute to this court on appeal, the Legislature's addition of the mutual consent language was intended to give the parties to an agency contract the power to agree to terminate or amend the contract without the 120-day notification period. On its face, Vikco's construction of the statute assumes that *without* the addition of the "except by mutual agreement" language, the original statute would actually have barred the parties to a private written agency contract from mutually agreeing to terminate the agency, once the contract had been in effect for over one year. We cannot impute such an intent to the Legislature. Nor would it be reasonable to assume that the addition of the mutual consent language had so limited an effect on the power of privately contracting parties to determine the terms of their mutual agreement. It is far more reasonable to conclude the drafters intended the additional language to make clear that the parties to a written insurance agency contract could mutually agree to a different (e.g., longer or shorter) notification procedure than the specific 120-day period set out in the statute.

Neither can the statutory 120-day notice period be read into the terms of the Agency Agreement by implication. Implied covenants are disfavored at law. The courts will not imply a better agreement for parties than they themselves have been satisfied to enter into, or rewrite contracts whenever they operate harshly. There can be no implied covenant where the subject matter is completely covered by the existing contract. (*Cherry* v. *Home Sav. & Loan Assn.* (1969) 276 Cal.App.2d 574, 580 [81 Cal.Rptr. 135], overruled on other grounds in *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943, 953 [148 Cal.Rptr. 379, 582 P.2d 970] and *Tucker* v. *Lassen Sav. & Loan Assn.* (1974) 12 Cal.3d 629, 640 [116 Cal.Rptr. 633, 526 P.2d 1169]; *Walnut Creek Pipe Distributors, Inc.* v. *Gates Rubber Co.* (1964) 228 Cal.App.2d 810, 815-816 [39 Cal.Rptr. 767].) The period of time required for termination notification is completely covered by the provision of the Agency Agreement requiring 45 days' notice. As a matter of law, the longer period of time required by section 769 cannot be implied in the parties' written contract to contradict the express provision to which they agreed.

## V. DISPOSITION

The judgment is affirmed.

Hanlon, P. J., and Poché, J., concurred.