Filed 12/24/20 Bautzer v. Select Portfolio Servicing, Inc. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MARK R. BAUTZER, as Trustee, etc., | |
| Plaintiff and Appellant, | E072733 |
| v. | (Super.Ct.No. PSC1805507) |
| SELECT PORTFOLIO SERVICING, INC., et al., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. David M. Chapman, Judge. Affirmed.

Law Offices of J. David Nick and J. David Nick for Plaintiff and Appellant.

Kutak Rock and Steven M. Dailey for Defendant and Respondent, Select Portfolio Servicing, Inc.

Wargo & French, Jeffrey N. Williams; RJT & Associates and Raymond J. Tittmann for Defendant and Respondent, Assurant, Inc.

1

Plaintiff Mark R. Bautzer, as successor borrower to the mortgage on his deceased mother's residence in Ojai, sued the mortgage servicing company (Select Portfolio Servicing, Inc.) and the provider of fire insurance (Assurant, Inc.). He claimed Select procured, or Assurant provided, a policy with limits insufficient to cover the loss from a fire that destroyed the property. His complaint contained causes of action for breach of contract, negligence, and unfair business practices. The trial court sustained Select's demurrer without leave to amend and granted Assurant's motion for judgment on the pleadings, resulting in a dismissal of the entire action. Bautzer challenges those rulings on appeal.

We conclude the trial court correctly determined Bautzer's claims fail as a matter of law because of one simple fact. The controlling agreement in this litigation is the insurance covenant in the deed of trust securing the mortgage on the Ojai property, and that document clearly states it is the borrower's responsibility to maintain fire insurance. In the event they fail to do so, any insurance the lender may purchase need not be of any particular "type or amount" and need not protect the borrower's interest in the property. Because Bautzer failed to allege any modification to this agreement or valid new agreement, none of his claims has merit. We therefore affirm.

## I

## FACTS

A. *The Original Complaint and the Deed of Trust*

Bautzer filed an original complaint in his capacity as the trustee of his deceased mother's revocable trust, which owns real property in Ojai containing a single-family

2

residence. The complaint alleged the following. In July 2014, "while acting as an agent of Assurant," Select "offered [him] to have the premises protected by fire insurance through an insurance policy that Select would purchase from Assurant." Select represented it would purchase a policy with limits "sufficient to cover the rebuilding cost of the premises" in the event of a fire and would bill Bautzer for the premiums and the mortgage payments on a monthly basis. Bautzer "accepted Select's offer," and Select then purchased a policy from Assurant that, unbeknownst to Bautzer, was insufficient to cover rebuilding costs. Bautzer made monthly premium payments to Select in the amount of $306.67.

When a fire destroyed the home in December 2017, Assurant paid out the policy limit of $866,977, which covered neither the cost to rebuild the residence nor the balance of the mortgage (which at that time was approximately $1,013,000). Select applied the proceeds to the mortgage, then initiated foreclosure proceedings to collect the remaining balance of about $150,000. Although the value of the land was appraised at only $645,000, Select would not accept payments from Bautzer that were less than "what was called for by the terms of the loan."

The complaint asserted a breach of contract claim against Select for failing to purchase fire insurance with policy limits sufficient to cover rebuilding costs (despite its promise to do so). The complaint also asserted a third party beneficiary breach of contract claim against Assurant, on the theory Select had actually requested the *correct* policy from Assurant, but Assurant failed to provide it. The complaint also contained negligence and unfair business practices claims against both Select and Assurant predicated on this

3

same conduct. Bautzer alleged it was both negligent and unfair to promise a borrower one type of insurance but procure (or in Assurant's case, provide) another.

Select filed a demurrer arguing, first and foremost, that Bautzer lacked standing because he hadn't alleged he was the real party in interest, that is, the borrower on the loan. Select also argued Bautzer's claims failed on their merits. It argued the deed of trust contained the only covenant it had with the borrower regarding insurance and asked the court to take judicial notice of the document. Select asserted the deed of trust provides that when the borrower fails to procure fire insurance, it is authorized to obtain insurance in *any amount*, to protect the *lender's* interest.

The deed of trust was recorded on July 12, 2006. It reflects that Bautzer's mother, Dana Wynter, had obtained a $1 million loan from Washington Mutual Bank, FA, that was secured by the real property in Ojai. Section 5 of the deed of trust is entitled "Property Insurance" and, as the name suggests, it sets out the borrower's and lender's covenants regarding insurance. That section says the "Borrower *shall* keep . . . the Property insured against loss by fire." (Italics added.) However, it also says if the borrower "fails to maintain any of the coverages," including fire insurance, the "Lender *may* obtain insurance coverage, *at Lender's option and Borrower's expense*." (Italics added.) The insurance industry often commonly refers to this type of insurance scenario as "force-placed" or "lender-placed" insurance. (See, e.g., *Valdez v. Saxon Mortg. Servs., Inc.* (C.D. Cal. Sept. 29, 2014) No. 2:14-CV-03595-CAS, 2014 WL 7968109, at *4; *Cannon v. Wells Fargo Bank, N.A.* (N.D. Cal. 2013) 917 F.Supp.2d 1025, 1029.)

4

Section 5 also says the "Lender is under *no obligation* to purchase any particular type *or amount* of coverage." (Italics added.) It further provides that "such [force-placed] coverage shall cover Lender, but might or *might not protect Borrower*, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability" and that it "might provide greater *or lesser* coverage than was previously in effect." (Italics added.) Section 5 requires the lender be named a "loss payee" on any policy obtained under the deed of trust and mandates that any proceeds must be used to repair the property unless "restoration or repair is not economically feasible or Lender's security would be lessened," in which case the proceeds must "be applied to the sums secured by [the deed of trust]."

The trial court did not rule on the request for judicial notice because it sustained Select's demurrer on the ground Bautzer had failed to allege standing. In its written ruling, the court reasoned that Bautzer had alleged he was the administrator of his deceased mother's estate but not that he was the borrower or had assumed the borrower's obligations, which he needed to do in order to have standing. The court added, "[t]he remainder of Select's arguments fail." It gave Bautzer 30 days to amend his complaint to cure the standing defect.

A.     *The Amended Complaint and Dismissal of the Action*

Bautzer filed a first amended complaint (FAC) that was identical to the original complaint except it added allegations to demonstrate his standing to sue. He alleged that, after his mother's death in 2011, he had not only become the owner of the property in

5

Ojai but had also assumed her obligations as the borrower on the loan, which was secured by the 2006 deed of trust.

Select once again demurred and raised the same arguments against the merits of Bautzer's claims as it had in its demurrer to the original complaint. It also filed another request asking the court to take judicial notice of the deed of trust.

In his opposition, Bautzer argued Select had breached the insurance covenant *in the deed of trust* and was negligent when it "elect[ed] to impose forced placed insurance." He argued the deed of trust obligated Select to purchase insurance "that at a minimum . . . cover[s] the value of rebuilding the structure." Specifically, he claimed the phrase "shall cover Lender" in section 5, "when read together with the borrower's requirement to insure 'improvements now existing . . . on the property,'" implicitly meant that any force-placed insurance must be "sufficient . . . to *rebuild* the lender's security (i.e., the premises)." He argued this was an "implied" covenant in the deed of trust that Select had breached when it purchased insufficient force-placed insurance.

The court issued a tentative opinion indicating its intention to overrule the demurrer on the ground Bautzer had sufficiently alleged that he and Select had entered into an insurance agreement in 2014 that was separate from (or modified) the deed of trust. However, the court reconsidered its position after holding two oral arguments at which Select argued Bautzer's opposition to the demur contained an admission not only that the deed of trust was the operative agreement but also that Select had obtained force-placed insurance under the provisions in section 5. The court granted Select's request for

6

judicial notice and concluded Select was correct—Bautzer failed to allege an additional insurance agreement apart from the covenants in the deed of trust. The court determined the deed of trust contained the parties' rights and duties regarding insurance and demonstrated beyond dispute that Bautzer's claims failed as a matter of law. Specifically, it concluded that because the deed of trust permitted (but did not require) Select to purchase a policy of any type or policy limit if Bautzer failed to satisfy his obligation to obtain fire insurance, Select was not liable to Bautzer in contract or tort and thus, by extension, had not committed an unfair business practice. The court sustained the demurrer and dismissed the claims against Select without leave to amend.

Assurant then filed a motion for judgment on the pleadings, which the trial court granted, resulting in a dismissal of the entire action. Bautzer filed a timely appeal.

**II**

**ANALYSIS**

Bautzer argues the trial court erred in various regards when it determined his claims against Select and Assurant failed as a matter of law. We find his arguments unpersuasive.

A.      *Standard of Review*

We review orders sustaining demurrers or granting motions for judgment on the pleadings de novo to determine whether the complaint states facts sufficient to constitute a cause of action. (*Rufini v. CitiMortgage, Inc.* (2014) 227 Cal.App.4th 299, 303-304; *Baughman v. State of California* (1995) 38 Cal.App.4th 182, 187.) We construe the

7

complaint liberally and treat it as admitting all material facts properly pleaded, but not contentions or legal conclusions. (*Rufini*, at pp. 303-304.) We also consider matters which may be judicially noticed, and we need not accept as true factual allegations contradicted by matters of public record or other judicially noticeable facts. (Code Civ. Proc., § 430.30, subd. (a); *Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374-375.)

B.      *Code of Civil Procedure Section 1008 Does Not Apply*

As a threshold argument, Bautzer claims the court lacked "jurisdiction" to hear Select's demurrer to the FAC because it raised the same arguments "previously rejected by the trial court" in Select's demurrer to the original complaint. According to Bautzer, Select violated Code of Civil Procedure section 1008, which requires that any motion to reconsider a previous order must be based upon "new or different facts, circumstances, or law." (Code Civ. Proc., § 1008, subd. (b).)

Bautzer is incorrect. Code of Civil Procedure section 1008 applies to motions to reconsider; it has no application where, as here, a defendant demurs to an entirely new pleading. The provision "does not apply when a party files a demurrer to an amended cause of action." (*Goncharov v. Uber Technologies, Inc.* (2018) 19 Cal.App.5th 1157, 1166 (*Goncharov*).) "'[W]hen a plaintiff files an amended pleading . . . , the amended cause of action is treated as a new pleading and a defendant is free to respond to it by demurrer on any ground.'" (*Ibid.*) Here, the trial court dismissed every cause of action in Bautzer's original complaint for lack of standing, and so when Bautzer filed the FAC, he

8

filed a new pleading to which Select could demur anew. In short, "[Select] did not file a 'renewed demurrer' to the prior complaint. Instead, [its] demurrer was 'an appropriate responsive pleading to a new complaint.'" (*Ibid*; see *Clausing v. San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1232; see also *Pavicich v. Santucci* (2000) 85 Cal.App.4th 382, 389, fn. 3 ["[defendant] was entirely within his rights to demur to the fifth cause of action of the first amended complaint . . . notwithstanding his prior unsuccessful efforts to demur to the fifth cause of action of the original complaint"].)

Bautzer relies on *Bennett v. Suncloud* (1997) 56 Cal.App.4th 91 and *Le Francois v. Goel* (2005) 35 Cal.4th 1094, but those cases "stand for the unremarkable proposition that a party cannot seek to dismiss the *same claim* based on a previously *rejected* argument without seeking reconsideration." (*Goncharov*, *supra*, 19 Cal.App.5th at p. 1167, italics added.) Here, the claims to which Select demurred were not the "same," because Bautzer filed a new complaint. Nor had the trial court previously "rejected" Select's arguments. Because it found Select's standing argument dispositive, the court did not rule on the remaining arguments.

Bautzer's entire argument relies on the part of the trial court's ruling where it noted that "the remainder of Select's arguments fail." This was commentary, not a ruling. And "[i]n any event, reviewing courts may consider de novo whether a challenged claim states a cause of action. [Citation.] An appellate court's role 'entails review of the trial court's ruling, not its rationale. Thus, even if the trial court . . . were constrained by its prior rulings . . . , [an appellate court is] not so constrained and [is] free to render an

9

opinion based on the correct rule of law.'" (*Goncharov*, *supra*, 19 Cal.App.5th at p. 1167.) We now turn to the merits of Bautzer's claims.

C.      *The Breach of Contract Claims Fail*

Select and Assurant argue Bautzer's contract claims against them fail. They point out he admitted in his opposition to Select's demurrer that the force-placed insurance provision in the deed of trust applies, and as such, he cannot allege a breach. We agree.

Bautzer alleged one agreement controlled in his complaint, but admitted a different agreement controlled in his briefing on demurrer. In his original complaint, he claimed that in 2014 Select offered to obtain a fire insurance policy for him that would be "sufficient" to cover rebuilding costs in the event of a fire, and he agreed to let Select do so. After Select argued in its demurrer that the 2006 deed of trust contained the relevant insurance covenant and asked the court to take judicial notice of that document, Bautzer filed the FAC, which included the same contract allegations, completely unchanged. (See *Goncharov*, *supra*, 19 Cal.App.5th at p. 1165 ["'[W]hen a plaintiff is given the opportunity to amend his complaint and elects not to do so, strict construction of the complaint is required and it must be presumed that the plaintiff has stated as strong a case as he can'"].) In other words, Bautzer continued to allege in the FAC that he and Select entered into a separate and additional insurance agreement in 2014.

Select then demurred to the FAC and raised the same substantive arguments about the deed of trust. Specifically, it denied having entered into a separate insurance agreement in 2014 wherein it promised to obtain insurance sufficient to cover rebuilding

10

costs in the event of a fire. It argued the only agreement between it and Bautzer regarding insurance was the deed of trust, under which Bautzer had no right to any specific type or amount of force-placed insurance.

In his opposition to Select's demurrer, Bautzer switched gears and argued Select had breached *the deed of trust* by obtaining a force-placed policy that failed to "cover" the lender, because its limits were insufficient to pay for rebuilding costs (or, at the very least, the balance of the mortgage). He made a new argument, not contained in his complaint, that the deed of trust obligated Select to obtain a fire insurance policy sufficient to cover rebuilding costs.

This is significant. A "[p]laintiff's papers in opposition [to a demurrer] are reliable indications of his position on the facts and we may use these statements as admissions against him." (*Setliff v. E. I. Du Pont de Nemours & Co.* (1995) 32 Cal.App.4th 1525, 1536.) As Select correctly argued to the trial court during oral argument on its demurrer, this new argument Bautzer articulated for the first time in his opposition admits that (a) the deed of trust is the applicable contract and (b) the insurance Select purchased was force-placed, obtained in the event the borrower defaults on their obligation to purchase insurance. (E.g. *Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 518 [affirming trial court's order sustaining the defendant's demurrer based on admissions in a plaintiff's opposition and observing, "[w]e may, and shall, take judicial notice of admissions in plaintiff's opposition to [the] demurrer"].)

11

Bautzer cannot state a claim for breach of contract against either Select or Assurant under the deed of trust. That document makes quite clear that when a borrower fails to obtain fire insurance, the lender may, "at [its] option," obtain fire insurance, but is not required to. What's more, the deed of trust also warns that although any force-placed or lender-placed insurance the lender does procure will be "at . . . Borrower's expense," it "might not" protect the borrower's interest in the property and need not be of any specific type or in any specific amount. In short, once Bautzer failed to obtain insurance, the deed of trust permitted Select to purchase any type or amount of insurance *for the lender's benefit* (to protect its security interest in the loan). Assurant, in turn, was not in privity with Bautzer. Its customer was the lender (and its mortgage servicer, Select), not the borrower.

Bautzer argues we're misreading the deed of trust. He maintains, as he did in the trial court, that the phrase "shall cover Lender" in section 5 means that any force-placed insurance must be sufficient to cover the lender's security interest in the loan. He argues Select failed to do that here because the policy fell short of the amount outstanding on the loan by about $150,000. It is Bautzer's reading that is strained. The deed of trust says that when the borrower "fails to maintain any of the [insurance] coverages described above," any force-placed insurance "*shall cover Lender*, but might or *might not protect Borrower*, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability." (Italics added.) It's clear in this context that the phrase "shall cover Lender" denotes who the coverage protects, rather than dictates a particular quality or

12

amount of coverage. We refuse to read "fully" into that phrase before "cover," as Bautzer would have us do, when the very next sentence advises that the lender "is under no obligation to purchase any particular type or amount of coverage."

Next, Bautzer argues the trial court erred by taking judicial notice of the deed of trust. He claims the "court was bound to accept as true the facts plead and the [2014] contract described in the FAC and not the terms of clause 5 of the Deed of Trust injected into the FAC." Bautzer leans too heavily on the general rule that we must accept as true all properly pled allegations in a complaint at the demurrer stage. This is not an absolute rule, and there is at least one exception that applies here. We will not assume a plaintiff's allegations are true if they are plainly contradicted by the plaintiff's own admissions, or by undisputed, judicially noticed facts. As we've explained, Bautzer himself admitted that Select had "elect[ed]" to purchase force-placed insurance. This admission contradicts his allegation that Select had instead offered to act as something like an insurance broker and obtain insurance to his specifications. Bautzer's claim that we cannot take judicial notice of *the contents* of the deed of trust also fails. "Where, as here, judicial notice is requested of a *legally operative* document—like a contract—the court may take notice not only of the fact of the document and its recording or publication, but also facts that clearly derive from its *legal effect*." (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 754.)

13

Finally, Bautzer argues that even if we do take judicial notice of the contents and legal consequences of the deed of trust, he sufficiently alleged a *different* contract—a 2014 agreement that Select would obtain an insurance policy for him with limits sufficient to cover rebuilding costs. We disagree. The essential elements of contract formation are capacity to contract, a lawful object, mutual consent of the parties to be bound, and sufficient consideration. (Civ. Code, § 1550; *Schaefer v. Williams* (1993) 15 Cal.App.4th 1243, 1246.) A complaint "must indicate on its face whether the contract is written, oral, or implied by conduct. [Citation.] If the action is based on an alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference." (*Otworth v. Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452, 458-459.) Bautzer's complaint satisfied none of these requirements. Importantly, it contained no allegations demonstrating that he provided Select with any consideration for promising to procure an insurance policy "sufficient" for his purposes. Because Bautzer does not argue that he can amend his complaint to cure these defects and allege a valid separate agreement, we uphold the trial court's determination that his breach of contract claims fail. (*Galbiso v. Orosi Public Utility Dist.* (2010) 182 Cal.App.4th 652, 663 [plaintiff bears the burden of demonstrating a reasonable possibility that defects can be cured by amendment].)

D.     *The Negligence and Unfair Business Practice Claims Fail*

The fact that the insurance covenants in the deed of trust control and do not require Select to purchase any particular type of fire insurance means that Bautzer's other

14

two causes of action also fail. As to his negligence claims, he cannot satisfy the first element of the tort—that Select or Assurant owed him a duty of care. (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1095 ["The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence"].) Bautzer's alleged injury involves conduct controlled by a loan agreement (the deed of trust). He claims he lost the property to foreclosure because Select obtained, or Assurant provided, insufficient fire insurance.

In California, "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as mere lender of money." (*Nymark v. Heart Federal Savings & Loan Assn.*, *supra*, 231 Cal.App.3d at p. 1096; see also *Wagner v. Benson* (1980) 101 Cal.App.3d 27, 35 [lender's liability to a borrower for negligence arises only when the lender "'actively participates' in the financed enterprise 'beyond the domain of the usual money lender'"].) "Loan servicers do not owe a duty to the borrowers of the loans they service." (*Shepherd v. Am. Home Mortg. Servs., Inc.* (E.D. Cal. 2009) 2009 WL 4505925, at *2; accord, *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49 [loan servicer did not owe the borrower a legal duty when discussing loan modifications].) As the mortgage servicer, Select did not owe Bautzer a duty of care. Its obligations to Bautzer sound in contract, not tort.

Bautzer's reliance on *Greenfield v. Insurance Inc.* (1971) 19 Cal.App.3d 803 and *Westrick v. State Farm Insurance* (1982) 137 Cal.App.3d 685 is misplaced. Those cases hold that an insurance broker hired by a plaintiff to procure a certain type of insurance policy owes the plaintiff a legal duty to exercise reasonable care to seek the coverage requested (*Greenfield*, at p. 810) and to disclose the rights and obligations under the policy (*Westrick*, at p. 692). The situation here is easily distinguishable. Select is the servicer of the loan; Bautzer never alleged he hired it to act as an insurance broker for him.

Nor did Assurant owe Bautzer a duty of care. Its relationship to Bautzer is even more attenuated than Select's, as Assurant was never in privity with him. Select obtained the insurance policy from Assurant then, as authorized under the deed of trust, billed Bautzer for the premiums. Assurant did not owe a legal duty to Select (let alone to Bautzer) to make any particular insurance available or to advise of any inadequacies in the policy limits. (*Gibson v. Government Employees Ins. Co.* (1984) 162 Cal.App.3d 441, 442-443, 448.)

Bautzer's unfair business practice claim fails because it is derivative of the contract and negligence claims. (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 718.) His claim that Select and Assurant were engaging in unfair business practices is predicated on the same conduct as his causes of action for breach of contract and negligence—namely, that Select failed to obtain, and Assurant failed to provide, insurance that fully covered the lender's interest in the loan (and thus would not

16

result in an outstanding balance Bautzer would either have to pay or lose the property in foreclosure).

Finally, we reject Bautzer's argument that we should reverse the trial court's ruling because it didn't explain its "sudden" change of course from its tentative decision to overrule the demurrer. In fact, the trial court *did* state its reasons for sustaining the demurrer, but even if it hadn't, we review the court's ruling, not its reasoning. (*McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784, 802.) Thus, "we may affirm the trial court's ruling 'on any basis presented by the record whether or not relied upon by the trial court.'" (*Ibid.*)

Bautzer's arguments on appeal can be boiled down to an insistence that, because we are at the demur stage, we should look at his complaint only and ignore the terms of the deed of trust. He argues that since he alleged Select promised to find him an acceptable insurance policy, we should accept that as the truth. Legal principles and common sense dictate that we should not. "'The interests of all parties are advanced by avoiding a trial and reversal for defect[s] in pleadings.'" (*Pacific States Enterprises, Inc. v. City of Coachella* (1993) 13 Cal.App.4th 1414, 1420, fn. 3.)

Bautzer's allegations and the judicially noticed deed of trust reveal as a matter of law that none of his theories of liability is tenable. We therefore conclude the trial court was correct to sustain Select's demurrer and grant Assurant's motion for judgment on the pleadings without leave to amend.

17

## III

## DISPOSITION

We affirm the judgment. Bautzer shall bear costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH _____
J.

We concur:

McKINSTER _____
Acting P. J.

RAPHAEL _____
J.

18