[No. S171442. Aug. 9, 2010.]

LOUIE HUNG KWEI LU, Plaintiff and Appellant, v.
HAWAIIAN GARDENS CASINO, INC., et al., Defendants and
Respondents.

594

## COUNSEL

Spiro Moss Barness, Spiro Moss, Dennis F. Moss; Law Offices of Andrew Kopel and Andrew Kopel for Plaintiff and Appellant.

Arbogast & Berns and David Arbogast for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff Appellant.

Sheppard, Mullin, Richter & Hampton, Tracey A. Kennedy; Law Offices of Michael St. Denis and Michael St. Denis for Defendants and Respondents.

Winston & Strawn, Anna Segobia Masters and Jennifer Rappoport for California Gaming Association as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

CHIN, J.—Labor Code[1] section 351 prohibits employers from taking any gratuity patrons leave for their employees, and declares that such gratuity is "the sole property of the employee or employees to whom it was paid, given, or left for." A number of Courts of Appeal have held that this prohibition, at least in the restaurant context, does not extend to employer-mandated tip pooling, whereby employees must pool and share their tips with other employees. (See *Leighton v. Old Heidelberg, Ltd.* (1990) 219 Cal.App.3d 1062, 1067 [268 Cal.Rptr. 647] (*Leighton*); see also *Etheridge v. Reins Internat. California, Inc.* (2009) 172 Cal.App.4th 908, 921–922 [91 Cal.Rptr.3d 816]; *Budrow v. Dave & Buster's of California, Inc.* (2009) 171

---

[1] All further statutory references are to the Labor Code unless otherwise noted.

Cal.App.4th 875, 878–884 [90 Cal.Rptr.3d 239]; *Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143 [131 Cal.Rptr.2d 771].)

In this case, a card dealer brought a class action against his casino employer based on its mandatory tip pooling policy. The casino's policy required dealers to contribute 15 to 20 percent of their tips to a tip pool to be shared among other designated employees who provided service to casino patrons. The dealer alleged that this policy constituted a conversion of his tips and violated, among other provisions, section 351.

As a threshold issue, the trial court concluded that section 351 does not provide a private cause of action for employees to recover any misappropriated tips from employers. The Court of Appeal agreed that section 351 does not itself contain a private right to sue. Less than two months later, another Court of Appeal expressly disagreed with the holding on section 351 of the appellate court below. (See *Grodensky v. Artichoke Joe's Casino* (2009) 171 Cal.App.4th 1399 [91 Cal.Rptr.3d 732], review granted June 24, 2009, S172237.) We granted review to resolve the conflict on this narrow issue.

For reasons that follow, we conclude that section 351 does not contain a private right to sue.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Louie Hung Kwei Lu (plaintiff) was employed as a card dealer at defendant Hawaiian Gardens Casino, Inc. (the Casino), from 1997 to 2003. The Casino had a written tip pooling policy that required dealers to set aside 15 to 20 percent of the tips they received on each shift. The dealers kept the remaining 80 to 85 percent of the tips received; the Casino did not deduct these sums from the minimum hourly wages the dealers earned. The Casino deposited the pooled tips into a "tip pool bank account" and later distributed the money to designated employees who provided service to casino customers. These employees included chip service people, poker tournament coordinators, poker rotation coordinators, hosts, customer service representatives or "floormen," and concierges. The tip pool policy specifically prohibited employers, managers, and supervisors from receiving any money from the tip pool. Plaintiff brought a class action against the Casino and its general manager. His complaint alleged that the Casino's tip pooling policy amounted to a conversion of his tips, and violated the employee protections under sections 221 (prohibiting wage kickbacks by employer), 351 (prohibiting employer from taking, collecting, or receiving employees' gratuities), 450 (prohibiting employer from compelling employees to patronize employer), 1197 (prohibiting payment of less than minimum wage), and 2802 (indemnifying employee for necessary expenditures). The complaint also alleged that

the Casino's conduct giving rise to each statutory violation constituted an unfair business practice under the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.).

The trial court granted the Casino's motion for judgment on the pleadings on the causes of action based on sections 351 and 450. It agreed with the Casino that neither section contained a private right to sue. The court also granted the Casino's successive motions for summary adjudication on the remaining causes of action. Plaintiff appealed.

The Court of Appeal held, "pursuant to the analysis in *Leighton*, that tip pooling in the casino industry is not prohibited by Labor Code section 351." However, it reversed the trial court's order granting summary adjudication of the UCL cause of action based on section 351. While section 351 itself contains no private right to sue, the Court of Appeal concluded this provision may nonetheless serve as a predicate for a UCL claim because plaintiff presented triable issues of fact as to whether section 351 prohibited certain employees who participated in the tip pool from doing so because they were "agents" of the Casino. In all other respects, the Court of Appeal affirmed the judgment.

We granted review limited to the sole issue of whether section 351 gives employees a private right of action.[2]

## DISCUSSION

### A. General Principles

■ A violation of a state statute does not necessarily give rise to a private cause of action. (*Vikco Ins. Services, Inc. v. Ohio Indemnity Co.* (1999) 70 Cal.App.4th 55, 62 [82 Cal.Rptr.2d 442] (*Vikco*).) Instead, whether a party has a right to sue depends on whether the Legislature has "manifested an intent to create such a private cause of action" under the statute. (*Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 305 [250 Cal.Rptr. 116, 758 P.2d 58] (*Moradi-Shalal*) [no legislative intent that Ins. Code, §§ 790.03 and 790.09 create private cause of action against insurer for bad faith refusal to settle claim]; *Crusader Ins. Co. v. Scottsdale Ins. Co.* (1997) 54 Cal.App.4th 121, 131, 135 [62 Cal.Rptr.2d 620] (*Crusader*) [no legislative intent that Ins. Code, § 1763 gave admitted insurers private right to sue surplus line brokers].) Such legislative intent, if any, is revealed through the language of the statute and its legislative history. (See *Moradi-Shalal*, *supra*, 46 Cal.3d at pp. 294–295.)

---

[2] We express no view on whether tip pooling is permissible under section 351.

A statute may contain " 'clear, understandable, unmistakable terms,' " which strongly and directly indicate that the Legislature intended to create a private cause of action. (*Moradi-Shalal, supra*, 46 Cal.3d at p. 295.) For instance, the statute may expressly state that a person has or is liable for a cause of action for a particular violation. (See, e.g., Civ. Code, § 51.9 ["A person is liable in a cause of action for sexual harassment" when a plaintiff proves certain elements]; Health & Saf. Code, § 1285, subd. (c) ["Any person who is detained in a health facility solely for the nonpayment of a bill has a cause of action against the health facility for the detention . . . ."].) Or, more commonly, a statute may refer to a remedy or means of enforcing its substantive provisions, i.e., by way of an action.[3] (See, e.g., § 218 ["Nothing in this article shall limit the right of any wage claimant to sue directly or through an assignee for any wages or penalty due him under this article."]; Bus. & Prof. Code, § 17070 ["Any person . . . may bring an action to enjoin and restrain any violation of this chapter and, in addition thereto, for the recovery of damages."]; *id.*, § 6175.4, subd. (a) ["A client who suffers any damage as the result of a violation of this article by any lawyer may bring an action against that person to recover or obtain one or more of the following remedies."]; Civ. Code, § 1748.7, subd. (d) ["Any person injured by a violation of this section may bring an action for the recovery of damages, equitable relief, and reasonable attorney's fees and costs."]; see *Crusader, supra*, 54 Cal.App.4th at p. 136 [listing other statutes expressly creating cause of action].) If, however, a statute does not contain such obvious language, resort to its legislative history is next in order. (*Moradi-Shalal, supra*, 46 Cal.3d at pp. 300–301; see *Crusader, supra*, 54 Cal.App.4th at pp. 133–134, 136 [relying on principles of general statutory interpretation].)

B.  *Statutory Language*

As part of article 1 (§ 350 et seq.) covering "Gratuities" in division 2, part 1, chapter 3 ("Privileges and Perquisites") of the Labor Code, section 351 provides in pertinent part: "No employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron, or deduct any amount from wages due an employee on account of a gratuity, or require an employee to credit the amount, or any part thereof, of a gratuity against and as part of the wages due the employee from

---

[3] Strictly speaking, the term "action" is not interchangeable with "cause of action." "While 'action' refers to the judicial remedy to enforce an obligation, 'cause of action' refers to the obligation itself." (*Nassif v. Municipal Court* (1989) 214 Cal.App.3d 1294, 1298 [263 Cal.Rptr. 195].) For purposes of the issue here, the distinction is not significant because the inclusion of either term would reveal a legislative intent to provide for a private cause of action. (See *Moradi-Shalal, supra*, 46 Cal.3d at p. 295; *Vikco, supra*, 70 Cal.App.4th at p. 62.)

the employer. *Every gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for.*" (Italics added.)[4]

This italicized language suggests that employees may bring an action to recover any misappropriated tips to which they are entitled, just as with other property rights. (See Code Civ. Proc., § 28 ["An injury to property consists in depriving its owner of the benefit of it . . . ."]; *id.*, § 30 ["A civil action is prosecuted by one party against another for the declaration, enforcement or protection of a right, or the redress or prevention of a wrong."].) However, we conclude that the statutory language does not " 'unmistakabl[y]' " reveal a legislative intent to provide wronged employees a private right to sue. (*Moradi-Shalal, supra,* 46 Cal.3d at p. 295.)

For instance, section 351 does not expressly state that there is a cause of action for any violation; nor does it refer to an employee's right to bring an action to recover any misappropriated gratuities. Rather, if an employer violates section 351 or any other provision in division 2, part 1, chapter 3, article 1, that employer is guilty of a misdemeanor and is subject to a fine and/or imprisonment. (§ 354 [maximum 60 days imprisonment and/or $1,000 fine].) Moreover, the Department of Industrial Relations is specifically charged with "enforc[ing] the provisions of this article." (§ 355 [all collected fines paid into state treasury and credited to general fund]; see § 356 ["purpose of this article is to prevent fraud upon the public in connection with the practice of tipping"].) Because section 351 does not include explicit language regarding a private cause of action, and related provisions create some ambiguity, we look to section 351's legislative history for greater insight. (See *Moradi-Shalal, supra,* 46 Cal.3d at pp. 300–301.)

## C.  *Legislative History*

Over 20 years ago, we extensively examined, in another context, the legislative history of section 351 and related provisions. (*Henning v. Industrial Welfare Com.* (1988) 46 Cal.3d 1262, 1270–1275 [252 Cal.Rptr. 278, 762 P.2d 442] (*Henning*) [holding no legislative intent to create "two-tier" minimum wage system in § 351 by permitting lower minimum wage for tipped employees].) Section 351, which can be traced back to 1917, has been amended a number of times. (Stats. 1917, ch. 172, § 1, p. 257; Stats. 1929, ch. 891, § 2, p. 1972 [predecessor statute to § 351 enacted as part of uncodified act]; Stats. 1937, ch. 90, § 351, p. 203 [§ 351 enacted and codified

---

[4] "Gratuity" is defined as including "any tip, gratuity, money, or part thereof that has been paid or given to or left for an employee by a patron of a business over and above the actual amount due the business for services rendered or for goods, food, drink, or articles sold or served to the patron." (§ 350, subd. (e).)

as part of act establishing Lab. Code]; Stats. 1965, ch. 686, § 1, pp. 2062–2063; Stats. 1973, ch. 879, § 1, pp. 1610–1611; Stats. 1974, ch. 552, § 1, p. 1375; Stats. 1975, ch. 324, § 1, p. 771; Stats. 2000, ch. 876, § 9; see *Henning, supra,* 46 Cal.3d at pp. 1270–1275.)

From 1929 to 1973, former section 351 (along with former § 352)[5] remained strictly "notice" statutes. (See *Cal. Drive-in Restaurant Assn. v. Clark* (1943) 22 Cal.2d 287, 293 [140 P.2d 657] [1929 statute "does not purport to authorize or legalize the retention or deduction of the tips received by the employees . . . the essential requirement being that the public be informed of the practice"].) In other words, former section 351 generally permitted an employer or agent to collect, take, or receive any gratuity or a part thereof given to an employee by a patron, or to require that such gratuity be deducted from or credited towards the employee's wages, as long as the employer posted a notice to the public in a conspicuous place regarding the disposition of tips. (See *Henning, supra,* 46 Cal.3d at pp. 1271–1274.) The former statute did not refer to "[e]very gratuity" as being the "sole property" of an employee or employees; the Legislature added this language in 1973. (Stats. 1973, ch. 879, § 1, p. 1611.) This language, which has largely remained unchanged to date, in fact originated in 1972 legislation that was not passed. (See Assem. Bill No. 78 (1 Assem. J. (1972 Reg. Sess.) p. 120) (Assem. Bill No. 78); *Henning, supra,* 46 Cal.3d at pp. 1273–1274.) While unpassed legislation ordinarily reveals very little regarding legislative intent (see *People v. Mendoza* (2000) 23 Cal.4th 896, 921 [98 Cal.Rptr.2d 431, 4 P.3d 265]), we have recognized that Assembly Bill No. 78 is "the ultimate source of section 351 in its current form." (*Henning, supra,* 46 Cal.3d at p. 1278.)

In general, Assembly Bill No. 78 "was introduced by the author [Assemblyman Leroy F. Greene] when he learned that all tips did not necessarily accrue to the employee who received the gratuity. [¶] Section 351 of the Labor Code is amended to spell out that gratuities are the sole property of the employee or employees in receipt of same, and the employer would be prohibited from taking any such gratuities or crediting them as part of any wages that might be due to his employees." (Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 78 (1972 Reg. Sess.) as amended June 5, 1972, p. 1; see

---

[5] As originally enacted in 1929 as part of an uncodified act, the precursor to section 352 provided in part: "Such notice shall also state the extent to which the employees are required by such employer to accept such tips or gratuities in lieu of wages or the extent to which the employee is required to accept and credit such tips and gratuities against wages due such employees." (Stats. 1929, ch. 891, § 2, p. 1972; see Stats. 1937, ch. 90, § 352, p. 203 [codifying § 352 as part of act establishing Lab. Code]; see also Stats. 1965, ch. 686, § 2, p. 2063; *Henning, supra,* 46 Cal.3d at pp. 1271–1273.) In 1973, former section 352 was repealed and its substance was incorporated into section 351. (Stats. 1973, ch. 879, §§ 1, 2, pp. 1610–1611.)

*Henning, supra*, 46 Cal.3d at p. 1278.) Assembly Bill No. 78 would have prohibited employers from taking any part of an employee's gratuity, without exception. (Assem. Bill No. 78 (1 Assem. J. (1972 Reg. Sess.) p. 120).)

Just a year later, the Legislature passed Assembly Bill No. 10 (1973–1974 Reg. Sess.), which was nearly identical in relevant part to Assembly Bill No. 78, except, significantly, it allowed an employer to take, deduct, or credit an employee's gratuity if "permitted by a valid regulation of the California Division of Industrial Welfare," and if notice to patrons was posted. (Stats. 1973, ch. 879, § 1, pp. 1610–1611, enacting Assem. Bill No. 10 (1973–1974 Reg. Sess.); see *Henning, supra*, 46 Cal.3d at p. 1273.) In 1975, the Legislature deleted this exception in section 351, which remains in substantially the same form today. (Stats. 1975, ch. 324, § 1, p. 771; see Stats. 2000, ch. 876, § 9, p. 6510 [deleting exception for situation "in which no charge is made to a patron for services rendered" and adding provision governing tips paid by credit card].)

Based on our review of section 351's legislative history, we conclude that there is no clear indication that the Legislature intended to create a private cause of action under the statute. The pertinent legislative history reveals that the "sole property" language was included in section 351 to prevent employers from "obtain[ing] the benefit (as, in effect, the payment of wages) of tips and other gratuities received by their employees . . . ." (Ops. Cal. Legis. Counsel, No. 3740 (Feb. 29, 1972) Tips: A.B. 78, p. 1; see *Henning, supra*, 46 Cal.3d at p. 1278 ["Our reading of the legislative intent is grounded in the words of A.B. 78 . . . and its legislative history."].) Specifically, Assembly Bill No. 78 would have invalidated an Industrial Welfare Commission (IWC) regulation "authorizing the crediting of tips or gratuities against the minimum wage . . . ." (Ops. Cal. Legis. Counsel on Assem. Bill No. 78, *supra*, at p. 3.) The subsequent successful amendments in 1973 and 1975 confirm that the Legislature's ultimate goal was to prevent an employer from taking any part of an employee's gratuity by crediting an employee's tips against any wages earned. (See Assem. Com. on Labor Relations, Rep. on Assem. Bill No. 10 (1973–1974 Reg. Sess.) for hearing on Apr. 4, 1973, p. 1 [as introduced, "AB 10 prohibits an employer from taking any tip given by a patron to his employee and prohibits an employer from requiring that such tip be credited against wages"]; Sen. Com. on Industrial Relations, analysis of Assem. Bill No. 232 (1975–1976 Reg. Sess.) May 19, 1975, p. 1 [Assem. Bill No. 232's purpose is "[t]o eliminate the authority of the [IWC] to permit employers to credit tips against the wages of employees"]; *Henning, supra*, 46 Cal.3d at p. 1274 [Assem. Bill No. 232 introduced "to reflect the policy [Assemblyman Greene] previously urged"].) And, in *Henning*, based on our review of the legislative history, we concluded that section 351 barred an IWC wage order that had permitted a lower minimum wage for tipped employees. (*Henning*,

*supra*, 46 Cal.3d at p. 1279 ["in function the 'tip credit' and the 'alternative minimum wage' are identical"].)

■ In sum, we find that the declaration that "[e]very gratuity" is the "sole property of the employee or employees to whom it was paid, given, or left for" (§ 351), simply affirmed what courts had "long held": that gratuities ordinarily belonged to the waiter or waitress absent a contrary agreement. (Ops. Cal. Legis. Counsel, No. 20547 (Nov. 4, 1971) Waiters and Waitresses: Tips and Gratuities, p. 1.) It did not reflect a legislative intent to give employees a new statutory remedy to recover any misappropriated gratuities. Indeed, the fact that neither the Legislative Analyst nor the Legislative Counsel acknowledged that a private right of action existed under section 351 at the time the Legislature included the "sole property" language or thereafter "is a strong indication the Legislature never intended to create such a right of action." (*Moradi-Shalal*, *supra*, 46 Cal.3d at p. 300.)[6] ■ "Thus when neither the language nor the history of a statute indicates an intent to create a new private right to sue, a party contending for judicial recognition of such a right bears a heavy, perhaps insurmountable, burden of persuasion." (*Crusader*, *supra*, 54 Cal.App.4th at p. 133.) ■ For reasons that follow, plaintiff's arguments do not persuade us otherwise.

D. *Plaintiff's Arguments*

■ While recognizing that section 351 is silent on whether employees may bring a private cause of action, plaintiff argues that it would be "absurd" to conclude that the Legislature would declare that gratuities belong to employees and yet deny them access to the courts to enforce these property rights. Plaintiff maintains, therefore, that the Legislature must have "implicitly created" such an action when it amended section 351 in 1973 and 1975,

---

[6] We reject plaintiff's contention that our pronouncements in *Moradi-Shalal* should be tempered here because the significant amendments to section 351 were passed in 1973 and 1975, well before we decided that case in 1988. Plaintiff asserts that before *Moradi-Shalal*, the Legislature would have believed "that if they created a property right there was a remedy." First, our holding in *Moradi-Shalal* that the Legislature must clearly manifest an intent to create a private cause of action under a statute is hardly novel. (*Moradi-Shalal*, *supra*, 46 Cal.3d at p. 295.) Second, as relevant here, in *Moradi-Shalal*, we validated the dissent in *Royal Globe Ins. Co. v. Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329], which had relied on a *1941* statute (see Bus. & Prof. Code, § 17070), to point out that "the Legislature was fully capable of writing an unambiguous statute creating civil liability for particular unfair business practices." (*Royal Globe*, *supra*, 23 Cal.3d at pp. 896–897 (conc. & dis. opn. of Richardson, J.).) "The legislative tools were at hand. They were not used." (*Id.* at p. 897.) Finally, although section 351 was again amended in 2000, we find no reference to a private cause of action in that particular portion of legislative history, despite the fact that the Legislature then amended another Labor Code provision expressly referring to an employee's right to bring an action. (Stats. 2000, ch. 876, § 3, p. 6507 [amending § 203.1 to add that penalty "shall not apply in any case in which an employee recovers the service charge authorized by Section 1719 of the Civil Code *in an action brought by the employee thereunder*" (italics added)].)

and relies heavily on the Restatement test (Rest.2d Torts, § 874A) for determining whether such an action may be *implied* from the statute.[7] (See *Middlesex Ins. Co. v. Mann* (1981) 124 Cal.App.3d 558 [177 Cal.Rptr. 495] (*Middlesex*); *Goehring v. Chapman University* (2004) 121 Cal.App.4th 353 [17 Cal.Rptr.3d 39] (*Goehring*); *Jacobellis v. State Farm Fire & Casualty Co.* (9th Cir. 1997) 120 F.3d 171 (*Jacobellis*).) The "Restatement approach allows the court itself to create a new private right to sue, even if the Legislature never considered creation of such a right, if the court is of the opinion that a private right to sue is 'appropriate' and 'needed.' " (*Crusader, supra*, 54 Cal.App.4th at p. 124 [rejecting Rest. approach to determine whether violation of statute gives rise to private right to sue].) Plaintiff asserts that we "confirmed the viability" of this test in *Katzberg v. Regents of University of California* (2002) 29 Cal.4th 300, 324 [127 Cal.Rptr.2d 482, 58 P.3d 339] (*Katzberg*).

In *Katzberg*, we considered whether an individual may bring a damages action based on an alleged violation of the due process clause of the state Constitution (Cal. Const., art. I, § 7, subd. (a)), "in the absence of a statutory provision or an established common law tort authorizing such a damage remedy for the constitutional violation." (*Katzberg, supra*, 29 Cal.4th at p. 303.) After an exhaustive analysis, we determined there was nothing in the language of article I, section 7, subdivision (a), nor was there any evidence in that section's legislative history, "from which we [might] find, within that provision, an implied right to seek damages for a violation of the due process liberty interest." (*Katzberg*, at p. 324.) Only then did we apply the Restatement test (Rest.2d Torts, § 874A). (*Katzberg, supra*, 29 Cal.4th at pp. 324–325.) While ultimately concluding that there was no constitutional tort action for monetary damages, we did not end our inquiry with the section's language or legislative history because we noted "we also have not discovered any basis for concluding that a damages remedy was intended to be foreclosed." (*Id.* at p. 324; cf. *id.* at p. 330 (conc. & dis. opn. of Brown, J.) [concluding majority's extended analysis unnecessary].) Based on these statements, plaintiff asserts that *Katzberg* should inform our decision here. We conclude that *Katzberg* is distinguishable.

In *Katzberg*, we limited our endorsement of the Restatement test to determining whether to "recognize a tort action for damages to remedy a *constitutional* violation." (*Katzberg, supra*, 29 Cal.4th at p. 325, italics

---

[7] The Restatement test for determining tort liability for a violation of a statute is as follows: "When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action." (Rest.2d Torts, § 874A.)

added.) Indeed, we noted that "with regard to most constitutional provisions, the words of the provision do not on their own manifest any such intent" to support a damages action. (*Id.* at p. 318.) In contrast, the case here concerns the availability of a private action for a *statutory* violation. As noted above (see *ante,* at pp. 596–597), our inquiry is different in that regard because we consider the statute's language first, as it is the best indicator of whether a private right to sue exists. (See *Moradi-Shalal, supra,* 46 Cal.3d at pp. 294–295; *Vikco, supra,* 70 Cal.App.4th at p. 62 ["provisions are themselves expression of legislative intent"].) Moreover, while we noted in *Katzberg* there was nothing to suggest "that a damages remedy was *intended to be foreclosed*" (29 Cal.4th at p. 324, italics added), the inquiry here is more limited because we begin with the premise that a violation of a state statute does not necessarily give rise to a private cause of action. (See *ante,* at p. 596; *Vikco, supra,* 70 Cal.App.4th at p. 62; see also *Crusader, supra,* 54 Cal.App.4th at p. 133.) Based on the foregoing, we decline to apply the Restatement test in this context.[8]

Plaintiff nonetheless maintains that the only way an employee may recover any misappropriated gratuities would be through a civil action. In support of this argument, plaintiff contends that the Department of Industrial Relations, which is charged with enforcing section 351, may only prosecute employers for misdemeanor violations and does not have the authority to bring an action to recover any misappropriated gratuities. (See §§ 354, 355.) In that regard, plaintiff argues that there is no comprehensive scheme for enforcing section 351 because, while section 351 has been amended numerous times since its official codification in 1937, sections 354 and 355 have remained virtually unchanged since 1937. (Stats. 1937, ch. 90, §§ 354, 355, p. 203; cf. Stats. 1983, ch. 1092, § 190, p. 4011 [amending § 354 to double the fine].)

Contrary to plaintiff's suggestion, our holding that section 351 does not provide a private cause of action does not necessarily foreclose the availability of other remedies. To the extent that an employee may be entitled to certain misappropriated gratuities, we see no apparent reason why other

---

[8] The case plaintiff heavily relies on to support his request to apply the Restatement test here (*Middlesex, supra,* 124 Cal.App.3d 558) is distinguishable. (*Crusader, supra,* 54 Cal.App.4th at pp. 128–129 [explaining in depth why "*Middlesex* did not use section 874A . . . to create a wholly new cause of action out of a regulatory statute."].) Thus, we also find unpersuasive those cases plaintiff cites that rely on *Middlesex* in applying that test. (See *Faria v. San Jacinto Unified Sch. Dist.* (1996) 50 Cal.App.4th 1939, 1947 [59 Cal.Rptr.2d 72]; *Jacobellis, supra,* 120 F.3d at pp. 174–175.) Moreover, contrary to plaintiff's suggestion, *Goehring* is also distinguishable. (*Goehring, supra,* 121 Cal.App.4th at p. 378 [Bus. & Prof. Code, § 6061's "refund language explicitly denotes a private right of action"]; Bus. & Prof. Code, § 6061, subd. (h) ["If any school does not comply with these requirements, it *shall make a full refund of all fees paid by students*" (italics added)].) In the present case, there is no such language "expressly entitl[ing] individuals to a refund or any other type of payment for violation of the statute." (*Goehring, supra,* 121 Cal.App.4th at p. 377.)

remedies, such as a common law action for conversion, may not be available under appropriate circumstances. (See *Moradi-Shalal, supra,* 46 Cal.3d at pp. 304–305 [even without private cause of action under statute, "courts retain jurisdiction to impose civil damages or other remedies . . . in appropriate common law actions"]; see also Civ. Code, § 3523 ["For every wrong there is a remedy."].)[9] Likewise, "nothing we hold herein would prevent the Legislature from creating additional civil or administrative remedies, including, of course, creation of a private cause of action for violation of" section 351. (*Moradi-Shalal, supra,* 46 Cal.3d at p. 305.)

## CONCLUSION

Based on the above, we affirm the Court of Appeal's judgment and remand the matter for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.

---

[9] We reject, however, plaintiff's contention that a violation of section 351 is a per se violation of an employment contract. The case he relies on most heavily is distinguishable. (*Lockheed Aircraft Corp. v. Superior Court* (1946) 28 Cal.2d 481, 486 [171 P.2d 21] ["upon violation of the section [1101], an employee has a right of action for damages for breach of his employment contract"].) In *Lockheed,* we recognized that another provision clearly and expressly provided for a private right of action for the statutory violation. (*Ibid.,* citing § 1105 ["Nothing in this chapter shall prevent the injured employee from recovering damages from his employer for injury suffered through a violation of this chapter."].)