Filed 2/22/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITY OF LANCASTER, | B321481 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. No. 21STCV01881 |
| NETFLIX, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge. Affirmed.

Schneider Wallace Cottrell Konecky, Todd M. Schneider, Jason H. Kim; Andrus Anderson, Jennie Lee Anderson; Messing & Spector, Noah A. Messing, and Phillip M. Spector for Plaintiff and Appellant.

Korein Tillery, Steven M. Berezney, and Garrett R. Broshuis for City of Creve Coeur, Missouri, Gwinnett County, Georgia, City of Brookhaven, Georgia, and Unified Government of Athens-Clarke County, Georgia as Amici Curiae on behalf of Plaintiff and Appellant.

Latham & Watkins, Jean A. Pawlow, Mary Rose Alexander, Peter E. Davis, Ward A. Penfold, Robert C. Collins III, and Michael A. Hale for Defendant and Respondent Netflix, Inc.

Wilson Sonsini Goodrich & Rosati, Victor Jih, Conor Tucker, Eric Kohan, and Christopher Hurley for Defendant and Respondent Hulu, LLC.

Kilpatrick Townsend & Stockton, Adam H. Charnes, and Samuel Z. Hyams for DIRECTV, LLC as Amicus Curiae on behalf of Defendants and Respondents.

Steptoe & Johnson, William Travis West, Robyn C. Crowther, and Melanie A. Ayerh for DISH Network, L.L.C. and Sling TV LLC as Amici Curiae on behalf of Defendants and Respondents.

## INTRODUCTION

Plaintiff and appellant City of Lancaster (the City) challenges a judgment of dismissal entered after the trial court sustained demurrers to its first amended complaint without leave to amend. Defendants and respondents are Netflix, Inc. (Netflix) and Hulu, LLC (Hulu).

The City brings the present action against Netflix and Hulu under the Digital Infrastructure and Video Competition Act of 2006 (Pub. Util. Code, § 5810 et seq.)[1] (the Act), legislation that governs video service providers in this state. Among other things, the Act requires all video service providers to obtain a franchise from the Public Utilities Commission (the Commission) before operating in the state. In addition, all franchise holders must pay franchise fees to local governments in exchange for the use of public rights-of-way to construct and operate video service

---

[1] All undesignated section references are to the Public Utilities Code.

networks. The City contends Netflix and Hulu are video service providers within the meaning of the Act and that they have been providing video service within its boundaries without the benefit of a state franchise. The City seeks monetary damages (unpaid past franchise fees) and declaratory relief (an order compelling Netflix and Hulu to obtain state franchises and pay franchise fees going forward).

Netflix and Hulu demurred to the operative first amended complaint, asserting they are not video service providers and that, in any event, the Act does not authorize the City to bring a private enforcement action against them. The trial court sustained the demurrers on multiple grounds and without leave to amend and entered a judgment of dismissal.

We affirm the judgment. Although the Act expressly authorizes a local government to sue a franchise holder concerning unpaid or underpaid franchise fees, the Act does not authorize a local government to seek franchise fees from non-franchise holders. And because the City's declaratory relief claim is wholly derivative of its claim for damages, it also fails.

## REGULATION OF VIDEO SERVICE PROVIDERS

At the time the Legislature enacted the Act, a majority of California residents (63 percent) received their television programming through cable companies. Cable companies had previously negotiated individual contracts with local governments in approximately 400 jurisdictions to use public rights-of-way for their cable networks. Non-cable subscribers used digital satellite (27 percent) and over-the-air broadcast (10 percent). (Senate Energy, Utilities and Communications Committee, Analysis of Assembly Bill No. 2987 (2005–2006 Reg.

Sess.) June 29, 2006 ["Committee Analysis of June 29, 2006"] p. 2.)

But as telephone companies upgraded their networks with fiber-optic cables, they gained the ability to transmit television programming—and compete directly with cable operators. The telephone companies, which were investing billions in infrastructure upgrades, favored a single, statewide system authorizing the construction and maintenance of their new networks. (Committee Analysis of June 29, 2006, p. 2.) The Legislature agreed.

The Legislature had the following concerns, among others, in mind when it adopted the Act:

- ◦ Creating a fair and level playing field for all market competitors that does not disadvantage or advantage one service provider or technology over another.

- ◦ Promoting widespread access to the most technologically advanced cable and video services to all California communities in a nondiscriminatory manner regardless of socioeconomic status.

- ◦ Protecting local government revenues and their control of public rights-of-way.

- ◦ Requiring market participants to comply with all applicable consumer protection laws.

- ◦ Complementing efforts to increase investment in broadband infrastructure and close the digital divide.

- Continuing access to and maintenance of the public, education, and government channels.

- Maintaining all existing authority of the Commission as established in state and federal statutes.

(§ 5810, subd. (a)(2).)

The Act regulates all "video service providers", i.e., cable operators and other providers of "video programming."[2] As pertinent here, the Legislature transferred responsibility for contracting with video service providers from local governments to the state. Specifically, the Act directs the Commission to issue state franchises authorizing the provision of video services in the state. (§ 5840.) The Act includes a requirement that video service providers pay local governments a franchise fee, i.e., a rent or toll

---

[2] " 'Video programming' means programming provided by, or generally considered comparable to programming provided by, a television broadcast station, as set forth in Section 522(20) of Title 47 of the United States Code." (§ 5830, subd. (r).)

" 'Video service' means video programming services, cable service, or OVS service provided through facilities located at least in part in public rights-of-way without regard to delivery technology, including Internet protocol or other technology. This definition does not include (1) any video programming provided by a commercial mobile service provider defined in Section 332(d) of Title 47 of the United States Code, or (2) video programming provided as part of, and via, a service that enables users to access content, information, electronic mail, or other services offered over the public Internet." (§ 5830, subd. (s).)

" 'Video service provider' means an entity providing video service." (§ 5830, subd. (t).)

for use of the public rights-of-way to construct and maintain their networks. (*Id.*, subd. (q)(1).)

## FACTS AND PROCEDURAL BACKGROUND

### 1. Original Complaint; Demurrers

The City initiated this putative class action suit against Netflix and Hulu (together, the Companies) in January 2021. The original complaint was purportedly filed on behalf of "[a]ll California cities, counties, and/or joint powers authorities" (collectively, local governments) in which Netflix, Hulu, or both, have provided video service.[3] The complaint asserted two claims: violation of the Act and declaratory relief.

The complaint generally alleged that the Companies provide video service in numerous California jurisdictions using broadband wireline facilities located at least in part in public rights-of-way. As such, the Companies were obligated to pay a video service provider fee to local governments based on the gross revenue generated from the provision of video service in each local government's jurisdiction. But, according to the City, the Companies have failed to pay the required video service provider fees to local governments.

The Companies demurred to the original complaint on a variety of grounds, including that the Act does not apply to the Companies because they do not operate any "networks" or "systems" in public rights-of-way, and that the Companies are not required to remit franchise fees to the local governments because

---

[3] Because no class has been certified, we will refer to the City as the sole plaintiff.

they do not hold state franchises. The Companies also argued that the City did not have a private right of action under the Act.

The court sustained both demurrers with leave to amend.

## 2. First Amended Complaint

The City filed the operative first amended complaint in October 2021. Like the original complaint, the operative complaint states two claims: violation of the Act and declaratory relief.[4]

In the first cause of action for violation of the Act, the City alleges the Companies provide video service in California and are video service providers within the meaning of section 5830. As video service providers, the Companies are required under section 5840 to pay a franchise fee to local governments in each service area. The complaint alleges the Companies have not paid such fees to local governments and seeks monetary damages for unpaid fees as well as pre- and post-judgment interest.

The City's declaratory relief claim seeks a judicial declaration that the Companies have violated the Act by failing to obtain state franchises from the Commission (§ 5840, subd. (c)) and by failing to pay franchise fees owed to local governments (*Id.*, subd. (q)). The City seeks an order compelling the Companies to "cure their noncompliance with the California Public Utilities Code[.]"

---

[4] Most of the allegations of the amended complaint relate to the content provided by the Companies and how that content is delivered to customers. Because we do not decide whether Netflix and Hulu are video service providers under the Act, these allegations are largely irrelevant. For the sake of brevity and clarity, we limit our discussion of the operative complaint to the issues essential to our analysis.

### 3. Demurrers; Oppositions

#### 3.1. Demurrers

Netflix demurred to the amended complaint on several grounds, including that the City does not have a private right of action against Netflix and Hulu. Specifically, Netflix argued that the Act provides only limited rights of action for local governments under sections 5870 (public access channels), 5890 (prohibition of redlining), and 5900 (customer service standards). And as to franchise fees in particular, the Act only authorizes a suit by a local government against a franchise holder concerning nonpayment or underpayment of franchise fees. (§ 5860, subd. (i).) However, because the Companies do not hold state franchises, only the Commission is authorized to bring an enforcement action against them. Netflix also asserted that it does not "use" public rights-of-way or provide "video services" within the meaning of the Act and that its services fall within the "public Internet exception" of the Act.[5] Hulu demurred on the same grounds.

#### 3.2. Opposition

The City opposed both demurrers. On the private right of action issue, the City asserted the Act is silent regarding both express and implied rights of action for nonpayment of franchise fees against video service providers that fail to apply for and

---

[5] Netflix also asserted several constitutionally-based arguments, urged that federal law preempts the Act, and claimed that the Act, if applied as suggested by the City, would violate the Internet Tax Freedom Act (47 U.S.C. §§ 151, 1101 et seq.). Finally, Netflix urged the court, if it were inclined to overrule the demurrer, to refer the matter to the Commission for decision in the first instance.

obtain a state franchise. But the City argued that nothing in the legislative history of the Act suggests the Legislature intended to deny a private right of action in the circumstances presented. Further, the City maintained, the absence of a private right of action against unauthorized video service providers would leave an enforcement gap because the Commission is not authorized to maintain such an action. According to the City, the Commission's authority is purely ministerial and very limited. And section 444 only authorizes the Commission to enforce fee provisions that relate to application and annual fees due from video service providers to the Commission. That section makes no mention of the franchise fees payable to local governments. In any event, the City asserted, even if the court were to decide that it does not have a private right of action under the Act, the court should still address and resolve its request for declaratory relief.

The City also addressed the alternative arguments asserted by Netflix, including the definition of "video service" in the Act, the qualitative similarities between Netflix's programming and traditional broadcast television programming, constitutional arguments, federal preemption, and the Internet Tax Freedom Act.

### 3.3. Replies

In reply, Netflix again requested that the court sustain its demurrer without leave to amend. On the issue of the private right of action, Netflix argued that the Act is not silent on the question, as the City had asserted. Instead, the Act includes several limited private rights of action for local governments, thus evidencing the Legislature's intention that entities such as the City have certain specific rights of action to the exclusion of all others. In addition, Netflix urged that the Commission is

9

authorized to initiate an enforcement action under section 444, as that provision authorizes actions against "video service providers," in contrast to the narrower terms "franchise holder" and "holder" found in section 5840. Hulu argued similarly in its reply and, in response to the City's assertion that the Act would contain an enforcement gap in the absence of a private right of action, noted that section 2101 gives broad enforcement powers to the Commission.

### 4. Trial Court Order

The court sustained both demurrers without leave to amend.

Regarding the City's claim that it could maintain this suit against Netflix and Hulu, the court found the Act does not expressly authorize such an action. With respect to disputes over franchise fees, the court noted that section 5860, subdivision (i) (section 5860(i)), provides a private right of action to local governments seeking to recover unpaid or underpaid franchise fees. But that private right of action is limited. First, only *franchise holders* are required to pay franchise fees to local government entities. And the City alleged that Netflix and Hulu do not hold state franchises. Second, section 5860(i) authorizes a narrow private right of action by a local government or a franchise holder "in the event of a dispute concerning compensation under this section," i.e., regarding franchise fees *owed by franchise holders* under section 5860. The court observed that nothing in section 5860 generally, or in section 5860(i) in particular, authorizes a local government entity to compel a non-franchise holder to obtain a franchise from the Commission (and thereby establish the obligation to pay franchise fees) as the City seeks to do in this case.

The court also noted that the Act only authorizes private rights of action by local government entities in specific and limited circumstances. (E.g., §§ 5870, 5890, 5900.) The court therefore inferred that the Legislature did not intend to create a broad private right of action in favor of government entities which was not clearly set forth in the statute.

Finally, the court rejected the City's contention that an enforcement gap would exist in the absence of a private right of action on the part of local government entities. The court noted that the Act explicitly provides the Commission broad enforcement rights under section 444, which would encompass an enforcement action against a video service provider that does not hold a state franchise.

## 5.    Judgment; Appeal

The court entered a final judgment of dismissal in favor of Netflix and Hulu on May 3, 2022. This timely appeal followed.

## DISCUSSION

Although the primary focus of the parties' and the court's efforts below relates to the applicability of the Act to the Companies, we focus our analysis on the threshold question of whether the Act authorizes the City to bring an action against a non-franchise holder to collect franchise fees. We conclude it does not and, on that basis, affirm the judgment in favor of Netflix and Hulu.[6]

---

[6] We do not consider the correctness of the court's ruling on the remaining issues contained in its order sustaining the Companies' demurrers. Nothing in this opinion should be construed to address the merits of those arguments.

11

## 1.     Standard of Review

We independently review a trial court's order sustaining a demurrer to determine whether the operative complaint alleges facts sufficient to state a cause of action. (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 725.) We assume the truth of all properly pled factual allegations and matters that are judicially noticeable. (*Ibid.*) We also liberally construe the complaint's allegations with a view toward substantial justice. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 43, fn. 7.)

When a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility that the plaintiff can amend the pleading to cure the defect. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) If the defect can be cured, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. (*Ibid.*) The burden of proving such reasonable possibility is squarely on the plaintiff. (*Ibid.*) Such a showing may be made for the first time on appeal. (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711; *City of Torrance v. Southern California Edison Co.* (2021) 61 Cal.App.5th 1071, 1083–1084.)

Finally, " 'we do not review the validity of the trial court's reasoning but only the propriety of the ruling itself. [Citations.]' [Citation.]" (*Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 958.) Accordingly, we will affirm the court's decision to sustain the demurrer if it is correct on any theory. (*Ibid.*)

## 2. The Act does not authorize local governments to seek franchise fees from non-franchise holders.

### 2.1. Statutory Interpretation

The question before us is whether the Act authorizes the City, expressly or impliedly, to bring a private right of action against a non-franchised video service provider to collect past-due franchise fees.[7] Familiar principles of law govern our interpretation of the Act and related statutory provisions. " ' "[O]ur task is to ascertain the intent of the Legislature so as to effectuate the purpose of the enactment. [Citation.] We look first to the words of the statute, which are the most reliable indications of the Legislature's intent. [Citation.] We construe the words of a statute in context, and harmonize the various parts of an enactment by considering the provision at issue in the context of the statutory framework as a whole." ' (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 83 (*Kim*).) If ' "the [statutory] language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." ' (*Ibid.*)" (*Rodriguez v. Superior Court* (2023) 15 Cal.5th 472, 496–497.)

As to whether the Act authorizes the present action by the City, our Supreme Court has provided additional guidance: "A violation of a state statute does not necessarily give rise to a private cause of action. (*Vikco Ins. Services, Inc. v. Ohio*

---

[7] For purposes of our analysis we assume, as the City has alleged, that Netflix and Hulu are "video service providers" under the Act. Nothing in this opinion should be construed as a legal or factual finding on that issue.

*Indemnity Co.* (1999) 70 Cal.App.4th 55, 62 (*Vikco*).) Instead, whether a party has a right to sue depends on whether the Legislature has 'manifested an intent to create such a private cause of action' under the statute. (*Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 305 (*Moradi-Shalal*) [no legislative intent that Ins. Code, §§ 790.03 & 790.09 create private cause of action against insurer for bad faith refusal to settle claim]; *Crusader Ins. Co. v. Scottsdale Ins. Co.* (1997) 54 Cal.App.4th 121, 131, 135 (*Crusader*) [no legislative intent that Ins. Code, § 1763 gave admitted insurers private right to sue surplus line brokers].) Such legislative intent, if any, is revealed through the language of the statute and its legislative history. (See *Moradi-Shalal, supra*, 46 Cal.3d at pp. 294–295.)

"A statute may contain ' "clear, understandable, unmistakable terms," ' which strongly and directly indicate that the Legislature intended to create a private cause of action. (*Moradi-Shalal, supra*, 46 Cal.3d at p. 295.) For instance, the statute may expressly state that a person has or is liable for a cause of action for a particular violation. (See, e.g., Civ. Code, § 51.9 ['A person is liable in a cause of action for sexual harassment' when a plaintiff proves certain elements]; Health & Saf. Code, § 1285, subd. (c) ['Any person who is detained in a health facility solely for the nonpayment of a bill has a cause of action against the health facility for the detention … .'].) Or, more commonly, a statute may refer to a remedy or means of enforcing its substantive provisions, i.e., by way of an action. (See, e.g., § 218 ['Nothing in this article shall limit the right of any wage claimant to sue directly or through an assignee for any wages or penalty due him under this article']; Bus. & Prof. Code, § 17070 ['Any person … may bring an action to enjoin and restrain any

14

violation of this chapter and, in addition thereto, for the recovery of damages.']; *id.*, § 6175.4, subd. (a) ['A client who suffers any damage as the result of a violation of this article by any lawyer may bring an action against that person to recover or obtain one or more of the following remedies.']; Civ. Code, § 1748.7, subd. (d) ['Any person injured by a violation of this section may bring an action for the recovery of damages, equitable relief, and reasonable attorney's fees and costs.']; see *Crusader, supra*, 54 Cal.App.4th at p. 136 [listing other statutes expressly creating cause of action].) If, however, a statute does not contain such obvious language, resort to its legislative history is next in order. (*Moradi-Shalal, supra*, 46 Cal.3d at pp. 300–301; see *Crusader, supra*, 54 Cal.App.4th at pp. 133–134, 136 [relying on principles of general statutory interpretation].)" (*Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 596–597 (*Lu*).)

### 2.2. The private right of action created by section 5860(i) does not expressly authorize an action against a non-franchise holder.

The City contends section 5860(i) expressly authorizes the present action because it provides a right of action for damages on the part of local governments against franchise holders and non-franchise holders alike. The City is wrong.

We examine the text of section 5860(i) as well as the text and structure of section 5860 generally. Section 5860 relates to the state franchise fee owed to local government entities by franchise holders. (*Id.*, subd. (a).) The section references the franchise fee formula (a percentage of the gross revenue generated within a particular jurisdiction) and prohibits a local government entity from imposing any additional fees or charges on a franchise holder relating to the provision of video services

15

within its jurisdiction. (*Id*., subds. (b), (c).) Additional subdivisions further define the term "gross revenue" for the purpose of calculating the franchise fee. (*Id*., subds. (d)–(g).) Subdivision (h) specifies the frequency of and deadline for payment of the franchise fee and provides for a late payment charge. It also requires the franchise holder to provide a summary to the local government entity explaining the basis of its franchise fee calculation. Subdivision (j) permits the franchise fee holder to pass the cost of the franchise fee to each customer using a separate line item. In sum, section 5860 provides details to franchise holders and local governments concerning the calculation and payment of the franchise fee.

The specific subsection relied upon by the City, section 5860(i), sets out the process a local government may use to determine whether a franchise holder operating within its jurisdiction has accurately calculated and fully paid the required franchise fee. It also provides a timeframe in which any dispute on that issue must be resolved. The final sentence of section 5860(i) states, "Either a local entity or the holder may, in the event of a dispute concerning compensation under this section, bring an action in a court of competent jurisdiction." The City asserts that it is a "local entity" and that the present action is a "dispute concerning compensation." Therefore, the City reasons, section 5860(i) empowers the City to bring this action for damages against the Companies because the Companies are "providing video service without paying mandated fees." Like the trial court, we reject the City's overly broad reading of section 5860(i) and conclude this provision only authorizes a local government to bring an action concerning the underpayment or nonpayment of franchise fees against a franchise holder.

16

The City focuses narrowly on a few words found in the final sentence of section 5860(i), quoted above, to argue the present action is a "dispute concerning compensation." But as that sentence states, the right of action created in favor of a local government does not relate simply to a "dispute concerning compensation," as asserted by the City, but must involve "a dispute concerning compensation *under this section*." (Italics added.) "This section," as used in the final sentence of section 5860(i), is limiting language referring to section 5860 specifically. (See, e.g., *Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 339 [noting Labor Code provision creating private right of action for wage claimants seeking penalties due "under th[e] article" precluded claimant from seeking penalties outlined in other articles].)

Further, the compensation at issue—the franchise fee—is only owed by a franchise holder. As explained, section 5860 concerns the state franchise fee owed to local government entities under section 5840, subdivision (q). (See, e.g., § 5860, subd. (a) ["The holder of a state franchise that offers video service within the jurisdiction of the local entity shall calculate and remit to the local entity a state franchise fee, adopted pursuant to subdivision (q) of Section 5840, as provided in this section."].) Section 5840, subdivision (q)(1), in turn, provides in pertinent part: "There is hereby adopted a state franchise fee payable as rent or a toll for the use of the public rights-of-way by holders of the state franchise issued pursuant to this division," i.e., under the Act. (See Stats. 2006, ch. 700 (A.B. 2987), § 3 [adding Division 2.5 to the Public Utilities Code].) These two provisions, taken together, establish that only "holders of the state franchise" are obligated to pay the franchise fee required under

17

section 5840, subdivision (q). Accordingly, the "dispute concerning compensation" referenced in section 5860(i), could only relate to the "franchise fee payable as rent or a toll for the use of the public rights-of-way by holders of the state franchise," and such a dispute could only arise between a local government entity and a franchise holder. The City concedes, and indeed alleges, that neither Netflix nor Hulu holds a state franchise.

The City complains that this interpretation of the statute is incorrect because the Legislature used broad rather than limiting language in the final sentence of section 5860(i). Specifically, the City notes that sentence authorizes an action concerning "compensation" and does not use the more specific and limiting language, "franchise fee." But as already explained, the only "compensation" required under section 5860 is the state franchise fee.

The City also believes it can bring an action under section 5860(i) against a non-franchise holder because the final sentence of section 5860(i) does not expressly state that a local government may only bring "an action against a holder of a franchise." Again, the City focuses too narrowly on specific words in the abstract, rather than looking at all the words in context. Section 5860(i) authorizes an action by either "a local entity or the holder." We reject the City's assertion that the Legislature's use of "the holder" rather than "the holder of a state franchise" in the final sentence of section 5860(i) evidences an intent to expand a local government's right of action to include claims against non-franchise holders. The term "holder" is used interchangeably with "franchise holder" throughout section 5860. (See, e.g., § 5860, subd. (a) ["The holder of a state franchise that offers video service within the jurisdiction of the local entity shall calculate and remit

to the local entity a state franchise fee …"]; *id.*, subd. (b) ["The state franchise fee shall be a percentage of the holder's gross revenues"]; *id.*, subd. (c) ["No local entity or any other political subdivision of this state may demand any additional fees or charges or other remuneration of any kind from the holder of a state franchise"]; *id.*, subd. (d) ["For purposes of this section, the term 'gross revenues' means all revenue actually received by the holder of a state franchise, as determined in accordance with generally accepted accounting principles, that is derived from the operation of the holder"].)

And even section 5860(i), cited repeatedly by the City to support its contention that "[t]here is no requirement that the dispute be 'with a franchise holder,' " uses "holder of a state franchise" and "holder" interchangeably: "Not more than once annually, a local entity may examine the business records of *a holder of a state franchise* to the extent reasonably necessary to ensure compensation in accordance with this section. *The holder* shall keep all business records reflecting any gross revenues, even if there is a change in ownership, for at least four years after those revenues are recognized by *the holder* on its books and records. If the examination discloses that *the holder* has underpaid franchise fees by more than 5 percent during the examination period, *the holder* shall pay all of the reasonable and actual costs of the examination. If the examination discloses that *the holder* has not underpaid franchise fees, the local entity shall pay all of the reasonable and actual costs of the examination. In every other instance, each party shall bear its own costs of the examination. Any claims by a local entity that compensation is not in accordance with subdivision (a), and any claims for refunds or other corrections to the remittance of *the holder of a state*

19

*franchise*, shall be made within three years and 45 days of the end of the quarter for which compensation is remitted, or three years from the date of the remittance, whichever is later. Either a local entity or *the holder* may, in the event of a dispute concerning compensation under this section, bring an action in a court of competent jurisdiction." (Italics added.)

Finally, the City argues that the court erred in following *Lu, supra*, and requiring " ' "clear, understandable, unmistakable terms," ' which strongly and directly indicate that the Legislature intended to create a private cause of action." (*Lu, supra*, 50 Cal.4th at p. 597.) According to the City, the "clear and unmistakable" standard only applies when the question is whether a statute creates *any* private right of action. To the extent the question relates to the *scope* rather than the existence of a private right of action, the City claims that conventional rules of statutory interpretation apply. (See *Kim v. Reins, supra*, 9 Cal.5th at p. 83; *Sevour-Lloff v. LaPaille* (2022) 80 Cal.App.5th 427, 441, review granted Oct. 26, 2022, S275848.) As noted, however, we review the correctness of the court's ruling, not the reasoning behind it. (See, e.g., *Align Technology, Inc. v. Tran, supra,* 179 Cal.App.4th at p. 958.) And in the present case, we would reach the same result under either standard.

20

### 2.3. The Act does not contain an implied right of action authorizing a local government entity to maintain an action for damages against a non-franchise holder.

In light of our conclusion that section 5860(i)[8] does not expressly create a private right of action for local government entities against non-franchise holders, we consider whether the Act contains an implied private right of action for local governments against non-franchise holders.

The City relies on two cases, *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208 (*Mabry*) and *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182 (*Ragland*), to assert that "a 'private right of action may inhere within a statute, otherwise silent on the point, when such a private right of action is necessary to achieve the statute's policy objectives.'" Further, according to the City, "courts will recognize an implied cause of action when '[t]here is no administrative mechanism to enforce [the statute], and a private remedy is necessary to make it effective.'" This is not an accurate statement of the law, however.

*Mabry*, decided by the Court of Appeal in June 2010, held that Civil Code section 2923.5, though not expressly creating a private right of action, impliedly created one because there was no administrative mechanism to enforce the statute, a private remedy furthered the purpose of the statute and was necessary for it to be effective, and California courts do not favor

---

[8] The City relies solely on section 5860(i) to argue that a private right of action is expressly created by the Act. For the sake of completeness, we note that no other section of the Act expressly creates the private right of action the City seeks.

21

constructions of statutes that render them advisory only. (*Mabry, supra*, 185 Cal.App.4th at p. 218.) Two months later, our Supreme Court issued its opinion in *Lu*.[9] There, the court considered whether Labor Code section 351, which precludes employers from taking gratuities intended for employees, contained an express or implied right of action on the part of employees. The court concluded the statute contained no express right of action and the plaintiff argued it would be absurd to "conclude that the Legislature would declare that gratuities belong to employees and yet deny them access to the courts to enforce these property rights." (*Lu, supra*, 50 Cal.4th at pp. 601–602.) The plaintiff urged, therefore, that the Legislature must have implicitly created such a right of action and argued that the court could recognize a private right to sue, even if the Legislature never considered creating such a right, if the court believed a private right to sue was "appropriate" and "needed." (*Ibid*.) The court acknowledged it had used that principle in a prior case to decide whether to recognize the existence of a tort remedy for a *constitutional* violation. (*Id*., at pp. 602–603.) But the court rejected the approach where, as here, the question is whether a *statute* provides a private right of action. In that regard, the court limited its analysis of the Legislature's intent to the language of the statute and the legislative history. (*Id*., at p. 603.) In short, the court rejected the approach suggested by the City here.

---

[9] Although *Ragland* was decided two years later, in 2012, the opinion makes no mention of *Lu*. Instead, the Court of Appeal followed *Mabry* without additional analysis. (See *Ragland, supra*, 209 Cal.App.4th at p. 201 ["Following the reasoning of *Mabry* … , we conclude section 2924g(d) creates a private right of action and is not preempted."].)

Following *Lu*, we examine the statements of legislative intent included in the text of the Act and the Act's legislative history to determine if the Legislature intended to allow local government entities to sue non-franchise holders. (*Lu, supra,* 50 Cal.4th at p. 597 [noting court may consider legislative history to ascertain whether Legislature intended to create private right of action].) The City first argues the statements of legislative intent found in section 5810 "should be interpreted to prevent companies from evading their DIVCA fees." As the City notes, the Legislature intended, by adopting the Act, to "[c]reate a fair and level playing field for all market competitors," to "[p]rotect local government revenues and control of public rights-of-way," and to compensate local entities for the use of their public rights-of-way. (§ 5810, subd. (a)(2)(A), (2)(C), (4)(B).) The City also cites section 5840, subdivision (q)(2)(A), which states: "The state franchise fee shall apply equally to all video service providers in the local entity's jurisdiction." While we agree with the City that the Legislature intended for video service providers to pay franchise fees in any jurisdiction where they provide video programming services, it does not follow that the Legislature also intended for a local government to bring a legal action in state court against any company it believes should, but does not, hold a franchise.

Indeed, the only reference to enforcement of the state franchise requirement found in section 5810 suggests that the Commission is tasked with enforcement. Section 5810, subdivision (a)(3), provides in pertinent part: "The public interest is best served when sufficient funds are appropriated to the commission to provide adequate staff and resources to appropriately and timely process applications of video service

23

providers and to ensure full compliance with the requirements of this division.[10] It is the intent of the Legislature that, although video service providers are not public utilities or common carriers, the commission shall collect any fees authorized by this division in the same manner and under the same terms as it collects fees from common carriers, electrical corporations, gas corporations, telephone corporations, telegraph corporations, water corporations, and every other public utility providing service directly to customers or subscribers subject to its jurisdiction such that it does not discriminate against video service providers or their subscribers." In particular, the provisions that the Commission should "ensure full compliance with the requirements of this division" and may "collect any fees authorized by this division" are strong indications that the Legislature intended for the Commission, and not local governments, to prosecute a video service provider that does not hold a state franchise.

The overall structure of the Act also suggests that the Commission, rather than local governments, is responsible for any enforcement issue relating to the state franchise requirement. Specifically, section 5840 sets forth the duties and responsibilities of the Commission. That section expressly provides that "[t]he commission is the sole franchising authority for a state franchise to provide video service under the division" and sets forth the Commission's responsibilities. (*Id.*, subd. (a).) Section 5840 defines the franchise application process to be administered by the Commission (*id.*, subds. (c)–(g)), imposes

---

[10] As already noted, "this division" refers to Division 2.5 of the Public Utilities Code, i.e., the Act.

notice requirements on the Commission (*id.*, subd. (h)), and outlines the information the Commission must include in any state-issued franchise (*id.*, subd. (i)). The section also imposes responsibilities on the recipient of a franchise and provides a process for a franchise holder to cancel a franchise. (*Id.*, subds. (j), (*l*)–(p).) Critically, section 5840 also provides that it is unlawful to provide video service in the state without a franchise. (*Id.*, subd. (k).) The Commission is generally empowered, on its own or with the assistance of the Office of the Attorney General, to bring an action in the name of the People of the State of California against a video service provider that fails to obtain a state-issued franchise. (§ 2101.)

Further, the Legislature delegated certain enforcement tasks to local governments in other sections of the Act. Specifically, the Act expressly provides limited rights of action for local governments under sections 5870 (public access channels), 5890 (prohibition of redlining), and 5900 (customer service standards). The fact that the Legislature expressly provided rights of action in some areas also suggests it did not intend, impliedly or otherwise, to create private rights of action in other areas.

In addition to considering the text and structure of the Act, we may also find evidence of legislative intent in portions of a statute's legislative history. (E.g., *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 29–39.) In this case, however, the legislative history is notable only in that it does not include any discussion of the issue presented here. In addition, we note that the Legislative Counsel makes no mention of a private right of action against non-franchise holders, which " 'is a strong indication the

25

Legislature never intended to create such a right of action.' " *(Lu, supra,* 50 Cal.4th at p. 601.)

In sum, we conclude that the Legislature did not intend to allow local governments to sue non-franchise holders under the Act.

**3.     The court did not err in rejecting the City's claim for declaratory relief.**

The City argues the court erred in concluding that it cannot obtain a declaratory judgment that requires the Companies to obtain state-issued franchises. We disagree.

In the operative complaint, the City realleges in the declaratory relief claim each of the allegations that provide the basis for its damages claim under the Act. It then alleges that "[a]n actual controversy has arisen and now exists between Plaintiff and the other Class members, on the one hand, and Defendants on the other" because the Companies "have failed to comply with their obligations under the California Public Utilities Code by failing to obtain a certificate of franchise authority and failing to pay the required franchise fees to Plaintiff and the other Class members." The City seeks "[a] judicial determination of these issues and of the legal rights and respective duties of Plaintiff, the other Class members, and Defendants" as well as an order directing the Companies "to cure their noncompliance with the California Public Utilities Code."

Code of Civil Procedure section 1060, which governs actions for declaratory relief, provides: "Any person interested under a written instrument … , or under a contract, or who desires a declaration of his or her rights or duties with respect to another … may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original

26

action … for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract." As the City notes, declaratory relief may be appropriate in a broad range of circumstances. And " '[t]he correct interpretation of a statute is a particularly suitable subject for a judicial declaration. [Citation.] Resort to declaratory relief therefore is appropriate to attain judicial clarification of the parties' rights and obligations under the applicable law. [Citation.]' [Citation.]" (*California Public Records Research, Inc. v. County of Yolo* (2016) 4 Cal.App.5th 150, 185.)

But a declaratory relief claim is subject to general demurrer where it relates to a substantive claim that is invalid as a matter law. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2023) ¶ 7:42.12.) "Where a trial court has concluded the plaintiff did not state sufficient facts to support a statutory claim and therefore sustained a demurrer as to that claim, a demurrer is also properly sustained as to a claim for declaratory relief which is 'wholly derivative' of the statutory claim. [Citation.]" (*Ball v. FleetBoston Financial Corp.* (2008) 164 Cal.App.4th 794, 800.) As is evident from the complaint, the City's declaratory relief claim is wholly derivative of the proposed cause of action for violation of the Act. The first cause of action seeking past due franchise fees is based on the Companies' failure to obtain state-issued franchises. The declaration sought by the second cause of action is a judicial declaration that the Companies must obtain state-issued franchises. Our decision, however, makes clear that it is the Commission, not the City, that should enforce issues relating to the issuance of a video service franchise.

Further, although the City's action is directed at the Companies, the City's declaratory relief claim is essentially a thinly veiled request that we order the Commission to issue franchises to the Companies or to institute an enforcement action against them. "Declaratory relief generally is not available to use the courts to tell an administrative agency how to do its job. An action for declaratory relief 'does not confer upon the court the authority to make pronouncements in a field reserved to other branches of government. [Citation.]' [Citation.]" (*Monterey Coastkeeper v. California Regional Water Quality Control Bd., etc.* (2022) 76 Cal.App.5th 1, 18.) We have interpreted the Act to delegate the enforcement of franchise-related issues, including enforcement, to the Commission. The court appropriately preserved the Commission's jurisdiction by dismissing the declaratory relief claim.

## DISPOSITION

The judgment is affirmed. Respondents Netflix, Inc. and Hulu, LLC shall recover their costs on appeal.

## CERTIFIED FOR PUBLICATION

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.